NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0947n.06

Case No. 14-3466

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 30, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHARLES ANDREWS, SR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| TD AMERITRADE, INC., | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____/ | ) | |

**Before: MERRITT, GIBBONS, and DONALD, Circuit Judges.**

**MERRITT, Circuit Judge.** This appeal arises from a dispute between the plaintiff, Charles Andrews, Sr., a lawyer, and defendant, TD Ameritrade, Inc., over control of funds held in a 401(k) trust account opened by plaintiff's adult son, Charles Jr., in 2010. Plaintiff claims that a power of attorney granted to him by his son gives plaintiff complete control over his son's financial affairs, including the Ameritrade account. Ameritrade claims that the account holder, plaintiff's son, revoked the power of attorney given to his father and that the necessary forms to transfer control over the account were never received by Ameritrade.

The primary question before us is whether the dispute regarding plaintiff's control over the account is within the scope of arbitration provisions included in Ameritrade's agreements with its clients, as the district court held. Plaintiff also appeals from two other orders issued by

the district court regarding the proceedings below. For the reasons that follow, we affirm the judgment of the district court.

## I. Facts and Procedural History

Charles Andrews, Jr., the son of plaintiff Charles Andrews, Sr., opened a 401(k) trust account with defendant TD Ameritrade in August 2010. The brokerage account is governed by a Client Agreement. The Client Agreement requires "any controversy" arising out of and relating to the account to be submitted to arbitration:

> I agree that any controversy between you . . . and me (including any of my officers, directors, employees or agents) arising out of or relating to this Agreement, our relationship, any services provided by you, or the use of the Services, . . . shall be arbitrated and conducted under the provisions of the Code of Arbitration . . . .

Client Agreement at ¶ 12 (attached as Ex. A to Defendant's Brief in Opposition to Plaintiff's Request for a Preliminary Injunction). On October 15, 2012, Charles Jr. executed a power of attorney giving broad powers over his financial affairs to plaintiff, including the right to withdraw money from the Ameritrade trust account. Specifically, the power of attorney states that Charles Jr. agrees to "relinquish all my authority to access my Team American 410k account or to change it or to make any withdrawal or other direction to Td [sic] Ameritrade with respect to same." General Power of Attorney at 3 (attached as Exhibit A to Complaint). Soon thereafter, on January 3, 2013, plaintiff faxed a Trading Authorization Agreement and a copy of the power of attorney executed by his son to Ameritrade. The Trading Authorization Agreement "authorizes and appoints the Authorized Agent(s) below as the Account Owner's agents . . . ." and allows the agent to make purchases and withdraw funds from the account without notice to the account owner. Trading Authorization Agreement at 1 (attached as Ex. C to Defendant's Brief in Opposition to Plaintiff's Request for a Preliminary Injunction). It also states that the

Client Agreement "shall apply equally to the Authorized Agent(s)." *Id.* The Trading Authorization Agreement was signed by plaintiff and included the handwritten notation "by authority of power of attorney attached." *Id.* at 2.

On January 14, 2013, shortly after receiving the power of attorney and the Trading Authorization Agreement from plaintiff, Ameritrade contacted plaintiff's son, the account holder, Charles Jr., via a secure email account and acknowledged receipt of "your Power of Attorney (POA) document," but advising Charles Jr. that the request could not be processed because

> [y]our state's [Ohio] statute prohibits the trustee of a trust from delegating their powers as trustee to an agent such as a Power of Attorney.
>
> Please consult your trust document to determine the provisions for removing or replacing a trustee. Please address any questions to your legal counsel. Please submit the attached Account Registration Conversion form along with a copy of your trust documents so we can make the necessary changes.

Email sent to Charles Andrews from TD Ameritrade, Jan. 14, 2013 (attached as Ex. D to Defendant's Brief in Opposition to Plaintiff's Request for a Preliminary Injunction). The record does not reflect whether plaintiff knew about this email. Ameritrade represented that it never received any of the documentation requested in the email. Aff. of Jeff Plummer in Support of Defendant's Brief in Opposition to Plaintiff's Request for Preliminary Injunction at 2, ¶ 6. The record does not reflect, nor does either party claim, that there was any further contact between plaintiff and Ameritrade for over 10 months.

On November 26, 2013, plaintiff sent a letter to Ameritrade and requested that the account be liquidated and all proceeds sent to him. Charles Jr. notified Ameritrade by phone that day that he did not authorize his father to liquidate the account. Ameritrade responded to plaintiff that its regulatory department would review the matter and get back to him. On

December 12, 2013, Ameritrade informed plaintiff that it could not comply with his request because the power of attorney had been revoked.

On December 16, 2013, plaintiff filed a complaint against Ameritrade in Ohio state court bringing a litany of claims: breach of contract, breach of fiduciary duty, theft or conversion, breach of the duty of loyalty, and a request for a temporary restraining order to prevent Ameritrade from disregarding the power of attorney and Trading Authorization Agreement, a request to prohibit anyone other than plaintiff from removing funds from the account and a request to force Ameritrade to liquidate the account and send the proceeds to plaintiff. The state court granted a temporary restraining order preventing Ameritrade from allowing anyone other than plaintiff to make changes to or withdraw money from the account, but it denied plaintiff's request to force Ameritrade to liquidate the account and give the proceeds to plaintiff. Ameritrade removed the complaint to federal court on the basis of diversity jurisdiction. Plaintiff moved for a preliminary injunction or to continue the temporary restraining order and Ameritrade countered by moving to dissolve the temporary restraining order and deny the request for a preliminary injunction.

The district court denied the motion for a preliminary injunction and dissolved the temporary restraining order, finding that plaintiff failed to establish a likelihood of success on the merits and did not demonstrate irreparable harm. Order dated Jan. 6, 2014. Plaintiff moved for reconsideration of the January 6, 2014, Order, attaching an affidavit that explained that his son was using the money in the account to fund a drug addiction. The motion for reconsideration was denied by the district court on the ground that it was a "rehashing" of the original motion. Order dated Feb. 7, 2014. Ameritrade then filed a Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Proceedings pursuant to Federal Rule of Civil Procedure 12(b)(1).

The district court granted the motion, compelled arbitration on all of plaintiff's claims and dismissed the complaint in its entirety. *Andrews v. TD Ameritrade, Inc.*, No. 1:13 CV 2811, 2014 WL 1761562 (N.D. Ohio May 1, 2014). Plaintiff filed a timely appeal of the January 6, 2014, Order denying the request for a preliminary injunction and dissolving the temporary restraining order, the February 7, 2014, Order denying reconsideration, and the May 1, 2014, Order dismissing the complaint in its entirety and compelling arbitration of all claims.

## II.     Discussion

### A.  Decision to Compel Arbitration

There are two arbitration provisions at issue in this matter. One is contained in the Client Agreement that governs the brokerage account, as quoted above. Plaintiff did not sign this Agreement, but it is the agreement by which his son agreed to be bound in opening a brokerage account with Ameritrade. As plaintiff purports to be his son's agent for purposes of the trust account through the power of attorney, the plain language of the Client Agreement binds plaintiff as well as his son. The broad language of the arbitration provision ("*any* controversy between you [Ameritrade] and me [client or his agent] shall be arbitrated . . . ") covers the dispute between Ameritrade and anyone claiming control over one of its accounts.

The other relevant document is the Trading Authorization Agreement, which was signed by plaintiff and sent to Ameritrade on January 3, 2013. That document allows for authorized agents of the account owner to purchase and sell securities in the account owner's name. It states that "[t]he Client Agreement set forth in the Account Agreement (including arbitration of disputes) . . .  shall apply equally to the Authorized Agent(s)." Trading Authorization Agreement at 1. By executing the Trading Authorization Agreement and holding himself out as his son's agent, plaintiff became bound by the terms of the Client Agreement and the Trading

Authorization Agreement, both of which contain arbitration requirements. Plaintiff relies on both the power of attorney and the Trading Authorization Agreement as the basis for his control over the account. *See* Complaint Counts I, IV. Plaintiff cannot seek the powers conveyed by the Trading Authorization Agreement and simply ignore its arbitration clause. *See Javitch v. First Union Secs., Inc.,* 315 F.3d 619, 625-26 (6th Cir. 2003) (receiver's rights as a plaintiff are subject to the same claims and defenses as the received entity he represents).

The Federal Arbitration Act codifies a national policy in favor of arbitrating claims when parties contract to settle disputes by arbitration. A district court should dismiss or stay a suit involving an arbitration clause as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The threshold question, then, is "whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008). Any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The Sixth Circuit analyzes the following four factors to determine whether to grant motions to dismiss and compel arbitration: (1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to

arbitration, whether the nonarbitrable claims should be stayed pending arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

Plaintiff argues that the only question at issue is the adequacy of the power of attorney under Ohio law, which is a question of law that should be answered in the first instance by the courts, not an arbitrator. But that is not true in this case in the face of the broad arbitration provision included in the Client Agreement and the Trading Authorization Agreement. Even if the power of attorney was adequate under Ohio law to appoint plaintiff his son's agent for purposes of controlling the account—a point Ameritrade disputes—it was within Ameritrade's rights to require further confirmation from its account holder to protect itself and to ensure that the account holder's wishes are followed. What those further requirements are, if any, is within the scope of the arbitration provision.

In addition to challenging the scope of the arbitration provision in the Client Agreement, plaintiff makes several other claims of error regarding the district court's decision to compel arbitration. Plaintiff's contention that Ameritrade waived reliance on the arbitration provision by removing the complaint to federal court and failing to raise the issue in the Notice of Removal is without merit. Removal to federal court does not waive a party's otherwise enforceable right to arbitrate. *Dantz v. Am. Apple Grp.*, 123 F. App'x 702, 707 (6th Cir. 2005). No special notice is required. He also argues that the district court erred in considering evidence outside the pleadings submitted by Ameritrade with its motion to compel arbitration and dismiss the complaint. However, Ameritrade filed its motion pursuant to Fed. R. Civ. Pro. 12(b)(1), lack of subject-matter jurisdiction, not Rule 12(b)(6), dismissal for failure to state a claim. The district court must undertake a limited review of evidence to determine whether it has the authority to hear a case or compel arbitration. *Javitch*, 315 F.3d at 625. The Plummer affidavit and the

Client Agreement were part of that limited review undertaken by the district court. Plaintiff also argues that the arbitration clause here is not valid because it uses "boilerplate" language that constitutes a contract of adhesion. However, the case on which he relies, *Sutton v. Laura Salkin Bridal & Fashions*, No. 72107, 1998 WL 45347 (Ohio Ct. App. Feb. 5, 1998), concerns an installment sales contract where the state court found that the seller and the customer had unequal bargaining power. That is not the case here. While the arbitration provision in the agreement is likely a standard form prepared by Ameritrade, this was not a case of unequal bargaining power where a commercial enterprise took advantage of an off-the-street buyer. Plaintiff is a lawyer and he signed the Trading Authorization Agreement containing an arbitration provision, holding himself out as his son's agent in matters concerning all of his son's business dealings, including matters concerning the brokerage account. Plaintiff also attacks the arbitration clause as "unconscionable" because he had no "meaningful" choice and was forced to sign a contract with terms that are unreasonably favorable to the drafting party. Plaintiff was the one who affirmatively reached out and sought control over his son's account and he willingly signed the Trading Authorization Agreement and sent it to Ameritrade. He was not forced to sign the agreement, but agreed to be bound by its provisions when he signed it.

## B. Removal of the Complaint

Ameritrade filed a Notice of Removal based on diversity jurisdiction, 28 U.S.C. § 1441(b)(1). Plaintiff contends that the district court erred in allowing the removal of the state case to federal court because (1) the underlying claims involved purely state-law issues and the application of state law, and (2) Ameritrade is registered to conduct business in Ohio, has an office in Ohio and is a citizen of Ohio, thereby destroying diversity with plaintiff, an Ohio resident. Plaintiff's arguments are untenable. There is complete diversity between the parties

because plaintiff is a citizen of Ohio and Ameritrade is a citizen of New York, where it is incorporated, and Nebraska, where it maintains its headquarters and "principal place of business." The amount in controversy exceeds $75,000. The fact that Ameritrade maintains an office in Ohio does not destroy diversity jurisdiction unless plaintiff can show that the office there is the "principal place of business" or "the nerve center" of the company. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-95 (2010) (corporation has only one principal place of business). Plaintiff submitted no evidence to rebut Ameritrade's affidavit stating that its principal place of business is in Nebraska or any evidence to show that the Ohio office is Ameritrade's "nerve center" or otherwise functions as its "principal place of business."

Plaintiff also argues that the state law claims, which here encompass all of plaintiff's claims, should be severed and heard in state court. Because removal was based on diversity under § 1441(b)(1), not federal question jurisdiction under § 1441(a) or (c), the federal court has the authority to hear the state-law claims and, in fact, could not decline to hear the state-law claims. *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011).

## C. <u>Other Claims</u>

Equally untenable is plaintiff's argument that the district court should have issued an injunction turning control of the account over to plaintiff. As we have held, this dispute is subject to the parties' agreement to arbitrate, a remedy inconsistent with issuing such an injunction. The claim fails on the merits.

Finally, the plaintiff argues that the district court erred in dismissing his complaint instead of ordering a stay until arbitration is complete. But the law is to the contrary: where there is "nothing for the district court to do but execute the judgment," dismissal is appropriate. *See Catlin v. United States*, 324 U.S. 229, 333 (1945). All of plaintiff's state-law claims (breach

of contract, breach of fiduciary duty, theft or conversion, and breach of the duty of loyalty) fall within the scope of the arbitration provision because they concern Ameritrade's decision not to recognize the power of attorney as sufficient under Ohio law and their own procedures to transfer sole authority over the account to plaintiff. Accordingly, the district court correctly determined that the case should be dismissed rather than stayed pending arbitration.

For the foregoing reasons, we affirm the judgment of the district court.