18-1865-cv
*Doctor's Associates, Inc. v. Alemayehu*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2018

Argued: May 23, 2019     Decided: August 14, 2019

Docket No. 18-1865-cv

DOCTOR'S ASSOCIATES, INC.,

*Plaintiff-Appellant,*

— v. —

GIRUM ALEMAYEHU,

*Defendant-Appellee.*

B e f o r e:

LIVINGSTON, LYNCH, and SULLIVAN, *Circuit Judges.*

Plaintiff-Appellant Doctor's Associates, Inc. ("DAI"), is the parent company of the Subway chain of restaurants. Defendant-Appellee Girum Alemayehu ("Alemayehu") sought DAI's approval to purchase an existing Subway franchise in Aurora, Colorado, and, when DAI denied his application,

Alemayehu sued, claiming that DAI discriminated against him on the basis of race. DAI then filed this lawsuit in the United States District Court for the District of Connecticut, seeking to compel Alemayehu to arbitrate. The United States District Court for the District of Connecticut (Hall, *J.*) denied DAI's motion to compel, holding that the Franchise Application, which DAI argues contains a binding arbitration clause, was not supported by consideration.

As a threshold matter, we agree with the district court that whether or not an agreement is supported by adequate consideration is a question about contract formation for the court, not the arbitrator, to decide. We conclude, however, that the promise to arbitrate in the Franchise Application was supported by adequate consideration. We therefore VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

----

JEFFREY R. BABBIN, Wiggin and Dana LLP, New Haven, CT (David R. Roth, Wiggin and Dana LLP, New Haven, CT, *on the brief*), *for Plaintiff-Appellant.*

JEFFREY COHEN, Cohen, LLC, Denver, CO (Anthony Garcia, Cohen, LLC, Denver, CO, *on the brief*), *for Defendant-Appellee.*

----

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-Appellant Doctor's Associates, Inc. ("DAI"), is the parent

company of the Subway brand of restaurant franchises. Beginning in 2016,

Defendant-Appellee Girum Alemayehu sought to purchase an existing Subway

franchise in Colorado. As part of the application process, Alemayehu checked a

2

box on an online form, agreeing to submit any claims arising from the application process to arbitration. When DAI denied Alemayehu's application, however, he filed a lawsuit in the United States District Court for the District of Colorado, claiming that DAI and its agents had discriminated against him on the basis of race. DAI responded by bringing this action in the United States District Court for the District of Connecticut, seeking to compel the arbitration of Alemayehu's claims.

The United States District Court for the District of Connecticut (Janet A. Hall, *J.*) denied the motion, finding that the putative arbitration agreement lacked consideration, and DAI appealed. For the reasons that follow, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

# BACKGROUND[1]

In 2016, Alemayehu, a Colorado businessman, sought to purchase an existing Subway franchise in Aurora, Colorado, from Gary Newcomb. After a few months of negotiation, Alemayehu and Newcomb, who owned multiple Subway franchises in the Denver area, reached a tentative agreement that Alemayehu and his wife would purchase the Aurora franchise for $120,000.

However, individuals seeking to start a new Subway franchise, or to purchase an existing franchise as a new owner, must first obtain DAI's approval. The application process begins with an online application. The application, on which potential franchisees must provide the restaurant chain with personal as well as financial information, is available on Subway's website.

Alemayehu filled out this initial application on February 15, 2017, on behalf of himself and his wife. The two-page application required Alemayehu to

---

[1] Our discussion of the facts is drawn primarily from Alemayehu's complaint in the Colorado action and the factual information submitted by the parties in connection with the motion to compel arbitration. In reviewing a motion to compel arbitration, we "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (internal citations, quotations marks and alterations omitted).

provide his demographic and personal information, as well as information about his educational background and past or current business experience.

In addition to demanding such information, the Franchise Application required the applicant to make various promises. Applicants were required to authorize DAI to complete a background check, and to agree to keep private any confidential information they receive from DAI. The Franchise Application also contained the following arbitration provision:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for the grant of a SUBWAY franchise from Franchisor, pursuant to the laws of Connecticut, USA, and by binding arbitration only. I agree that the arbitration will be administered by either the American Arbitration Association or its successor ("AAA") or the American Dispute Resolution Center or its successor ("ADRC") at the discretion of the party first filing a demand for arbitration. I understand that AAA will administer the arbitration in accordance with its administrative rules (including, as applicable, the Commercial Rules of the AAA and the Expedited Procedures of such rules), and ADRC will administer the arbitration in accordance with its administrative rules (including, as applicable, the Rules of Commercial Arbitration or under the Rules for Expedited Commercial Arbitration). If both AAA and ADRC are no longer in business, then I understand that the parties will mutually agree upon an alternative administrative arbitration agency. If the parties cannot mutually agree, then the parties agree to take the matter

> to a court of competent jurisdiction to select the agency. I agree that arbitration will be held in Bridgeport, Connecticut, USA, conducted in English and decided by a single arbitrator.

J. App'x at 14. Applicants were required to check a box immediately below this text, certifying that they "ha[d] read the above disclaimer." *Id.* It was not possible to submit the Franchise Application without checking the box and typing a name into a signature box below it.

As Alemayehu later stated in his Colorado complaint, "Subway began taking actions in consideration of their applications" shortly after he submitted the application form. J. App'x at 24. DAI required Alemayehu and his wife to take the Wonderlic Personnel Test at the office of Clear Stone Development, Inc. ("Clear Stone");[2] the couple completed the test on February 22, 2017. Several weeks later Alemayehu was informed that he had passed the test, but that his wife had not. Alemayehu was then interviewed at the Clear Stone office. During this initial interview, Alemayehu alleges, Connie Gemignani, Director of Operations for Clear Stone, told him not to sign a contract with Newcomb. She then instructed Alemayehu to attend a training seminar.

---

[2] Clear Stone is a Colorado corporation and serves as Subway's franchise development agency for Denver and parts of southern Colorado.

Alemayehu had a final interview with Clear Stone on May 24, 2017, during which Gemignani allegedly told Alemayehu that he was "not fit" to run a Subway franchise. J. App'x at 27. According to Alemayehu, Gemignani did not tell him what specifically made him unqualified. She later told Newcomb, however, that she "did not want to talk to [Alemayehu] because [Clear Stone was] worried he would be playing the race card with them," and that she therefore would not reconsider Alemayehu's application. J. App'x at 117–18.

Alemayehu filed suit in the United States District Court for the District of Colorado on January 26, 2018. In his complaint, Alemayehu claimed that DAI was responsible for the actions of Clear Stone and its employees, and that DAI engaged in its own wrongful conduct. He claimed that, in denying his application, DAI, Gemignani, and Clear Stone had discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981. He also asserted several state law claims, including tortious interference with prospective business advantage, extreme and outrageous conduct, deceit based on fraud, violations of the Colorado Consumer Protection Act, breach of the implied covenant of good faith and fair dealing, and civil conspiracy.

In response to the Colorado lawsuit, DAI brought the instant action to

compel arbitration in the United States District Court for the District of

Connecticut.[3] DAI relied on the arbitration provision of the Franchise

Application, alleging that the provision required Alemayehu to arbitrate "any

disputes or controversies arising out of or relating to the application or candidacy

for the grant of a Subway franchise from the Franchisor." J. App'x at 9. DAI also

claimed that the arbitration provision required that any arbitration "must be in

accordance with the Commercial Rules of either the American Arbitration

Association . . . or the American Dispute Resolution Center" and that arbitration

"is to take place in Bridgeport, Connecticut." J. App'x at 8. DAI therefore

requested that the district court in Connecticut enter "an order pursuant to 9

U.S.C. § 4 directing Alemayehu to arbitrate with DAI [the] claims against both

DAI and its agents" underlying Alemayehu's Colorado action.[4] J. App'x at 10.

---

[3] DAI asserted that venue was proper because, among other reasons, Alemayehu "agreed to arbitrate in Connecticut." J. App'x at 8. Alemayehu does not raise any objection to venue.

[4] Following the filing of the Connecticut action, the district court in Colorado stayed the proceedings there pending resolution of the motion to compel arbitration. *See* Order, *Alemayehu v. Gemignani*, 18-cv-212-CMA (D. Colo. March 23, 2018), ECF No. 16. After the district court in Connecticut denied the motion, Alemayehu sought to vacate the stay. But the Colorado district court denied his request pending this Court's resolution of this appeal. The United States Court of Appeals for the Tenth Circuit dismissed Alemayehu's appeal of that order for

Alemayehu opposed DAI's application on various grounds. Rather than addressing the merits of Alemayehu's arguments, however, the district court instead raised *sua sponte* the question of consideration. It concluded that the court "ha[d] insufficient information to determine whether the Franchise Application submitted by [Alemayehu] constitutes a contract, either in whole or with respect to the arbitration agreement, specifically whether there is consideration." J. App'x at 148. It then requested supplemental briefing from the parties.

Following that briefing, the court denied DAI's motion to compel. *See Doctor's Assocs., Inc. v. Alemayehu*, 321 F. Supp. 3d 305 (D. Conn. 2018) (*"DAI"*). Rejecting DAI's arguments to the contrary, the district court concluded that the Franchise Application "contains only unilateral promises made by the applicant, Alemayehu" and failed to require anything of DAI. *Id.* at 309. As a result, the court concluded that there was no consideration and therefore "the parties did not agree to arbitrate." *Id.* at 313.

The district court entered judgment in favor of Alemayehu, and DAI timely appealed.

---

lack of appellate jurisdiction. *See Alemayehu v. Gemignani*, 769 F. App'x 555, 562 (10th Cir. 2019). The Colorado proceedings accordingly remain stayed.

**DISCUSSION**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, parties may contract to arbitrate their disputes, and such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA "embodies a national policy favoring arbitration" founded upon "a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, [their] disputes." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (internal citations, quotation marks, and alterations omitted). The Act was intended to "place[] arbitration agreements upon the same footing as other contracts." *Id.* (internal quotation marks omitted). Arbitration remains, however, a creature of contract: "The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Id.*

DAI argues that Alemayehu promised to arbitrate his claims when, upon submitting his application, he checked a box adopting an agreement to "settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy . . . by binding arbitration only." J. App'x at 14. On appeal, DAI raises two primary arguments challenging the

10

district court's denial of its motion to compel arbitration. First, it argues that the question whether the promise to arbitrate was supported by adequate consideration should have been decided by the arbitrator, not by the district court. Second, should we conclude that the consideration question is for the courts to decide, DAI argues that the agreement to arbitrate is supported by adequate consideration and, therefore, that the parties have a binding contract that requires Alemayehu to submit his claims to arbitration.

We review the district court's denial of a motion to compel arbitration *de novo*. *Meyer v. Uber Techs., Inc.* 868 F.3d 66, 72 (2d Cir. 2017).

## I.  Who Decides the Question of Consideration?

Before reviewing the district court's determination that there was not sufficient consideration, we must address a threshold issue that we have not previously resolved: must the question whether an arbitration clause is supported by adequate consideration be decided by a court at the outset, or may it be referred to an arbitrator?

Under the FAA, threshold questions of arbitrability presumptively should be resolved by the court and not referred to the arbitrator. *See, e.g., First Options of*

11

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995).[5] While the presumption may

be overcome where the parties "clearly and unmistakably" agree to arbitrate

threshold questions such as whether the arbitration clause applies to a particular

dispute, or whether it is enforceable, parties may not delegate to the arbitrator the

fundamental question of whether they formed the agreement to arbitrate in the

first place. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287,

299-301 (2010) (internal quotation marks omitted).

In *Granite Rock*, the Supreme Court clarified that its "precedents hold that

courts should order arbitration of a dispute only where the court is satisfied that

---

[5] "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. The Franchise Application stated that disputes would be decided "pursuant to the laws of Connecticut, USA." J. App'x at 14. The district court, however, declined to enforce the choice-of-law provision, concluding that Colorado law applied. *DAI*, 321 F. Supp. 3d at 308 & n.1. While DAI asserts that Connecticut law should control, it also acknowledges that, like the district court, it "is unaware of any substantive difference" between the law of Connecticut and Colorado relevant to this appeal. Appellant's Br. at 32-33 n.9. Because the parties do not identify a meaningful relevant difference between Connecticut and Colorado law, we need not resolve the choice-of-law issue here. *See, e.g.*, *Schnabel*, 697 F.3d at 119 ("But as the district court recognized, neither that court nor this one need resolve this typically thorny choice-of-law question, because both Connecticut and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term.").

neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Id.* at 299 (emphasis in original). The Court in *Granite Rock* thus expressly distinguished threshold questions concerning contract *formation* from questions concerning enforceability and scope, noting that the parties may agree to arbitrate the latter in a parenthetical conspicuously *not* applicable to the former. *See id.* S*ee also Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("[W]e first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause. . . . Arguments that an agreement to arbitrate was never formed . . . are to be heard by the court even where a delegation clause exists.").[6]

---

[6] DAI argues that the parties delegated threshold issues by incorporating the rules of the American Arbitration Association ("AAA") and the American Dispute Resolution Center ("ADRC"), both of which empower arbitrators to decide questions of arbitrability, including questions of the arbitrator's own jurisdiction and the existence of a contract. It relies on *Contec Corp. v. Remote Solution, Co. Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005), in which this Court held that the parties' incorporation of the AAA rules amounted to "clear and unmistakable evidence" of the parties' intent to delegate threshold issues.

But even assuming that DAI is correct that the Franchise Application's invocation of the two sets of rules required arbitration of threshold questions, the Court still "must resolve the disagreement" over "the formation of the parties' arbitration agreement" before referring the dispute to arbitration. *Granite Rock*, 561 U.S. at 299–300.

This distinction accords with basic principles of contract law. An agreement that has not been properly formed is not merely an unenforceable contract; it is not a contract at all. And if it is not a contract, it cannot serve as the basis for compelling arbitration. Arbitration is, first and foremost, "strictly a matter of consent." *Granite Rock*, 561 U.S. at 298 n.6. To take the question of contract formation away from the courts would essentially force parties into arbitration when the parties dispute whether they ever consented to arbitrate anything in the first place.

Accordingly, the question before us is what type of issue, exactly, is consideration. Is it a question of contract *formation*, such that a court must decide the issue in order to ensure that the parties actually consented to arbitrate at all? Or is it an issue related to the enforceability or scope of the arbitration clause and therefore one that the parties may choose to delegate?

Basic tenets of contract law yield a simple answer. As one treatise notes, "[a]t common law the formation of an informal contract requires that legally sufficient consideration be given for the promise or promises contained within the contract." 3 Williston on Contracts § 7:1 (4th ed.). The requirement that a contract be supported by consideration has continued, with slight modification,

14

into the present, where it remains an essential element of contract formation: "Where no consideration exists, and is required, the lack of consideration results in no contract being formed in the absence of a substitute for consideration" such as estoppel. *Id.* at § 7:11; *see also* 17A Am. Jur. 2d Contracts § 18 (noting several formulations of the essential elements of contracts, each including consideration).

Both Connecticut and Colorado law treat consideration as a necessary element of contract formation, following the standard formulation of contract formation. *See, e.g., Summerhill, LLC v. City of Meriden*, 131 A.3d 1225, 1229 (Conn. App. Ct. 2016) (affirming trial court's conclusion that there was insufficient evidence to submit the question of a contract's existence to the jury where the alleged contract "did not set forth any consideration to support the formation of a contract"); *Harley v. Indian Spring Land Co.*, 3 A.3d. 992, 1013 (Conn. App. Ct. 2010) ("[T]he elements of a breach of contract include the formation of an agreement[,] which, in turn, requires the presence of adequate consideration . . . ." (citation omitted)); *Pierce v. St. Vrain Valley Sch. Dist. RE-1J*, 981 P.2d 600, 603 (Colo. 1999) (explaining that "consideration" and "mutual assent" are "the basic elements of contract formation"); *Legro v. Robinson*, 328 P.3d 238, 246 (Colo. App. 2012) ("A contract is formed when one party makes an offer and the other accepts

15

it, and the agreement is supported by consideration.") (quoting *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009)). Because consideration is fundamental to contract formation, it is an issue reserved for the courts under *Granite Rock*.[7]

We conclude that whether a purported promise to arbitrate was supported by consideration must be resolved by the court. We therefore turn to the question of the consideration supporting the Franchise Application at issue here.

## II. Was the Agreement Supported by Consideration?

The district court held that the "alleged contract" was not supported by consideration because it "contains only unilateral promises made by the applicant, Alemayehu." *DAI*, 321 F. Supp. 3d at 309. Rejecting DAI's arguments to the contrary, it concluded that, while a promise to consider an application might be sufficient consideration for promises made in submitting that

---

[7] DAI's arguments about the *scope* of the arbitration provision (and the AAA and ARDC rules) are beside the point. Once formed, of course, a broad agreement to arbitrate might require the arbitrator to determine the scope of the arbitration provision at issue. *See, e.g., Bell v. Cendant Corp.*, 293 F.3d 563, 568 (2d Cir. 2002). The question here is not whether the language of the provision can be read as broad enough to encompass issues of formation, but rather whether the clause itself exists as a binding agreement in the first place. If there is no consideration for the promise to arbitrate, then there is essentially no contractual language to interpret.

16

application, "DAI did not make a legally enforceable promise to consider Alemayehu's Franchise Application" because there was "no language in the Franchise Application binding DAI to consider franchise applications, to provide applicants with additional information, or to respond to everyone who applies." *Id.* at 310.

That conclusion was in error. A fundamental tenet of the law of consideration is that "[c]onsideration may consist *of a performance* or of a return promise," Restatement (Second) of Contracts § 71, cmt. d (emphasis added), and that, except in certain circumstances not relevant here, "any performance which is bargained for is consideration," *id.* § 72. *See also Mandell v. Gavin*, 816 A.2d 619, 625 (Conn. 2003) (adopting Restatement (Second) definition of consideration); *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (noting that, under Colorado law, "sufficient consideration . . . [requires] an exchange of one party's promise *or performance* for the other party's promise or performance.") (emphasis added); 17A Am. Jur. 2d Contracts § 101 ("There is consideration for a contract if the promisee, being induced by the agreement, does anything legal that he or she is not bound to do, or refrains from doing anything that he or she has a right to do.").

17

Here, Alemayehu received a bargained-for performance in exchange for his agreement to arbitrate. Alemayehu wished to purchase the Aurora Subway franchise from Newcomb, but Newcomb was contractually forbidden from transferring the franchise without DAI's approval. DAI was under no obligation to entertain an application from any would-be franchisee who did not agree to DAI's preconditions. Accordingly, DAI solicited franchise applications from applicants willing to provide various items of personal information as well as to make various promises — including, *inter alia*, to maintain confidentiality and to arbitrate all disputes arising out of the application process.[8] By completing and submitting his application, Alemayehu offered that information and those promises in exchange for DAI's subsequent review of the application. DAI then accepted that offer by giving the performance that Alemayehu had sought: it reviewed Alemayehu's application and actually considered him for the franchise. DAI thereby provided Alemayehu with a benefit in exchange for Alemayehu's

---

[8] Such preconditions for entering even preliminary negotiations for a business transaction are not uncommon. Parties often require suitors for a business opportunity to agree to provide financial or other information, or to enter a non-disclosure agreement or, as here, an arbitration agreement, before undertaking even to consider a proposed transaction. *See, e.g.*, *Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1018 & n.4 (9th Cir. 2019).

earlier application promises, concluding a contract between the parties and binding Alemayehu to comply with those promises.

The district court correctly observed that, since DAI did not *promise* to consider properly submitted applications, an individual's franchise application could "simply languish[], unread, in an electronic inbox" and that no express promise "preclude[d] DAI from unilaterally deciding not to review any applications submitted." *DAI*, 321 F. Supp. 3d at 310. Here, however, DAI *did* review Alemayehu's application. In doing so, DAI both accepted Alemayehu's offer to arbitrate all claims arising out of such review and simultaneously provided the very consideration (a review of the application) that Alemayehu sought by applying in the first place.

Alemayehu also challenges this conclusion on grounds slightly different from those stated by the district court. He argues that "[i]n order to accept the offer [by rendering performance], the offeree must give . . . that for which the offeror bargains. If it is in any material respect different, there is no contract." Appellee's Brief at 32 (internal quotation marks and citation omitted). He argues that DAI never specified what performance it would provide to ensure consideration, and that therefore mutual assent was necessarily lacking.

But, again, DAI rendered the exact performance that Alemayehu sought. It did not (as Alemayehu suggests in a hypothetical) "send[] Alemayehu a $50 gift card to Starbucks a few weeks after the Application was submitted instead of considering the Application." *Id.* at 33. DAI's website solicited applications, but conditioned the filing of an application on Alemayehu's agreement to arbitrate disputes. Alemayehu began his application by navigating to the portion of Subway's website labeled "Apply to Own." J. App'x at 46. The application stated it was to be "used for purchasing a new franchise, an additional franchise, or the purchase and transfer of an existing store," but that applying alone would "not obligate the applicant to purchase or the franchisor to sell a franchise or location." J. App'x at 13. The application was thus explicitly an application to be *considered* to own a franchise. As he proceeded through the form, Alemayehu consented to release his information for a background search and an investigative consumer report, the exact steps later taken by DAI when it referred him to the Wonderlic test, training, and interviews. The performance that DAI would provide in exchange for Alemayehu's completion of the online application was clear from the moment that Alemayehu sat down at his computer. Indeed, Alemayehu himself alleged in his complaint in the District of Colorado that DAI

20

had "tak[en] actions in consideration of [Alemayehu and his wife's] applications." J. App'x at 24.

Given the specific steps taken by DAI in this case, then, we conclude that there was sufficient consideration to support the agreement to arbitrate.[9] Nothing in this opinion, of course, expresses any view on whether DAI considered Alemayehu's application fairly, or whether, as Alemayehu alleges, it violated federal or state law by denying his application because of his race. Holding that DAI's consideration of his application is sufficient consideration to support a promise by Alemayehu to arbitrate his claims in no way suggests that DAI can contract out of its legal obligation to consider an applicant (who agrees to DAI's demand for an arbitration agreement) in a non-discriminatory manner. The issue before us is only who will be responsible for determining Alemayehu's claim of discrimination: a court or an arbitrator.

Accordingly, we vacate the district court's judgment, which was

---

[9] DAI also raises two other arguments regarding consideration. First, it argues that the arbitration provision itself is mutual and would require DAI to arbitrate claims, even though its language purports only to bind Alemayehu. Second, it argues that having an opportunity to be considered, by itself and without performance on the part of DAI, would be a sufficient benefit to Alemayehu to constitute consideration. We need not address either argument.

predicated on the absence of consideration. In opposing the motion to compel before the district court, however, Alemayehu "raised a number of arguments" other than consideration. *See DAI*, 321 F. Supp. 3d at 313 (noting issues). In light of its conclusion that the Franchise Application did not constitute a binding contract, the district court did not reach those issues. *Id.* We therefore remand to the district court to consider Alemayehu's other arguments in the first instance, and for any other necessary proceedings.

## CONCLUSION

For the reasons stated above, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.