NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0285n.06

No. 20-5894

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 11, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PETER W. ANDERSON, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CHARTER COMMUNICATIONS, INC., dba | ) | KENTUCKY |
| Spectrum; CHRISTOPHER CORNETT, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GIBBONS, KETHLEDGE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. When enforcing the Federal Arbitration Act, the Supreme Court has long held that parties may agree to arbitrate more than the merits of their legal claims. They may also agree to arbitrate "gateway" questions that are preliminary to the merits, such as whether their arbitration contract even covers the claims that a party seeks to litigate. This case requires us to consider several "gateway" questions. Peter Anderson sued his former employer. The district court compelled him to arbitrate his claims and dismissed his suit. Anderson now argues that his arbitration agreement did not cover his claims, that it was unconscionable, and that his employer failed to give adequate consideration in return for his agreement to arbitrate. But the agreement reserved his coverage and unconscionability arguments for the arbitrator to resolve, and his former employer gave adequate consideration. We thus affirm the decision to compel arbitration. But we also hold that the court should have stayed rather than dismissed Anderson's suit.

I

For 18 years, Anderson worked for Charter Communications, a telecommunications company that most of the public knows as "Spectrum." Charter fired Anderson in 2018 after coworkers complained that he had used offensive language. Asserting that their allegations were false, Anderson brought a bevy of state-law claims against Charter in Kentucky state court. Charter removed Anderson's suit to federal court.

Charter then moved to compel arbitration and dismiss (or, in the alternative, stay) the suit. In 2017, Charter had announced a "Solution Channel" dispute-resolution program in an email to employees. The email told employees that they would agree to arbitrate employment disputes with Charter unless they opted out within 30 days. Anderson did not opt out. With a few exceptions, the agreement thus required Anderson to arbitrate "any dispute arising out of or relating to" his termination from Charter. Agreement, R.5-2, PageID#87.

The district court held that Anderson agreed to arbitrate his claims. *See Anderson v. Charter Commc'ns*, 2020 WL 3977664, at *3 (W.D. Ky. July 14, 2020). It compelled arbitration and dismissed Anderson's suit with prejudice. We review the court's decision to compel arbitration de novo. *See Bratt Enters. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003).

II

A

The Federal Arbitration Act makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This Act creates a substantive body of federal arbitration law that requires courts to enforce arbitration contracts "according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). These terms commonly indicate that an arbitrator should

decide the merits of the claims that one of the parties might raise against the other. A hypothetical employment contract, for example, might note that the employee must arbitrate any employment claims that the employee has against the employer under the relevant laws. *See, e.g.*, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1413 (2019); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109–10 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991).

Yet arbitration agreements often send more than the parties' legal claims (like those hypothetical employment claims) to arbitration. An agreement might also state that an arbitrator should decide preliminary issues that arise before the merits—what the Supreme Court calls "gateway" questions about the "arbitrability" of the claims. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). The Supreme Court has developed different rules for different types of gateway questions.

Some gateway questions concern an arbitration agreement's "coverage." Suppose that the hypothetical employee argues that the parties' arbitration contract does not cover the employment claims raised in court. Who should decide whether the agreement includes them? Courts presumptively decide this coverage question on the background assumption that the parties did not mean to arbitrate it. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995). But if the arbitration contract unambiguously indicates that the arbitrator gets to decide whether the contract applies to the claims, courts must respect that choice and send the question to arbitration. *See Henry Schein*, 139 S. Ct. at 530.

Other gateway questions concern an agreement's "enforceability." Suppose that the employee argues instead that a court should resolve the merits of the employment claims because the contract that contains the arbitration clause is invalid under a general contract-law theory like unconscionability or duress. Who should decide whether the employment contract or arbitration

3

clause is enforceable? The Supreme Court's answer to this question distinguishes between a general challenge to the contract *as a whole* and a specific challenge to the *arbitration clause*. *See Preston v. Ferrer*, 552 U.S. 346, 353–54 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–45 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). A general challenge to the entire contract (for example, a claim that the contract was fraudulently induced) must be sent to the arbitrator even when it might invalidate the arbitration clause too. *See Prima Paint*, 388 U.S. at 403–04 (relying on 9 U.S.C. § 4). Conversely, a specific challenge to the arbitration clause (for example, the claim that it was fraudulently added at the last minute) must be decided by a court before the court compels arbitration. *See Buckeye*, 546 U.S. at 444–46.

This same distinction applies even when an employer and employee enter into a separate contract that is solely about arbitration. Suppose that this standalone arbitration agreement contains a "delegation clause" that requires the arbitrator to decide questions about the contract's enforceability, such as the employee's claim that the arbitration agreement is unconscionable. If the employee's unconscionability claim attacks the *entire arbitration agreement* rather than the *delegation clause*, the arbitrator gets to decide the claim. *See Rent-A-Ctr.*, 561 U.S. at 72. If, by contrast, the employee's unconscionability claim attacks the delegation clause specifically, the court must resolve that claim before sending the suit to arbitration. *See id.*

Still other gateway questions concern an agreement's "formation." Suppose that the employee argues that a court should resolve the employment claims because the employee never entered into the contract containing the arbitration clause (say, the employee argues that the arbitration agreement has a forged signature). An arbitration contract, like any other contract, rests on the parties' consent. *See Lamps Plus*, 139 S. Ct. at 1415–17. So a party generally may not be

coerced to arbitrate if the party has not agreed to it. *See VIP, Inc. v. KYB Corp.* (*In re Auto. Parts Antitrust Litig.*), 951 F.3d 377, 382–83 (6th Cir. 2020). Indeed, the Supreme Court has repeatedly disclaimed the notion that its cases compel a party to arbitrate the fundamental question whether the parties agreed to arbitrate at all. *See Rent-A-Ctr.*, 561 U.S. at 70 n.2. Courts instead must decide whether the parties actually entered into an arbitration agreement before sending the dispute to arbitration. *See Sevier Cnty. Schs. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 475 (6th Cir. 2021); *see also, e.g.*, *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 401–02 (3d Cir. 2020); *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019); *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514–15 (5th Cir. 2019); *Rivera-Colón v. AT&T Mobility P.R., Inc.*, 913 F.3d 200, 207–08 (1st Cir. 2019); *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 & n.2 (8th Cir. 2014).

B

These background rules doom Anderson's three challenges to the district court's decision to compel arbitration. *First*, Anderson raises a "coverage" claim: He argues that his arbitration agreement with Charter does not cover his specific claims in this suit. That is so, Anderson says, because the parties' agreement "specifically excluded" "[c]laims older than the statute of limitations applicable to such claims[.]" Agreement, R.5-2, PageID#88. Anderson asserts that this carveout applies here because the one-year statute of limitations for his claims ran between the time that he sued and the time that the district court compelled arbitration.

Yet Anderson ignores that his agreement unambiguously sent this coverage question to the arbitrator. *Henry Schein*, 139 S. Ct. at 530. The agreement noted that "all disputes related to the arbitrability of any claim or controversy" should be submitted to arbitration; it added for good measure that "the arbitrator shall have the sole authority to determine whether a particular claim

or controversy is arbitrable." Agreement, R.5-2, PageID#87, 89. Thus, the arbitrator must decide whether Anderson's claims in this suit fall within the arbitration exclusion for untimely claims.

*Second*, Anderson raises an "enforceability" claim: He argues that his arbitration agreement with Charter is unconscionable. For two reasons, however, the arbitrator must decide this unconscionability claim. To begin with, Anderson has never challenged (and so has forfeited any challenge to) the district court's holding that his agreement with Charter contains provisions delegating this enforceability question to the arbitrator. *Anderson*, 2020 WL 3977664, at *3. (Some other district courts that have considered the same Charter agreement have suggested that it would not send the enforceability question to arbitration. *See Durruthy v. Charter Commc'ns, LLC*, 2020 WL 6871048, at *2–3 (S.D. Cal. Nov. 23, 2020); *Gonzales v. Charter Commc'ns, LLC*, 2020 WL 6536902, at *3 (C.D. Cal. Oct. 26, 2020).)

In addition, Anderson's unconscionability arguments attack the arbitration agreement *as a whole*, not the *specific provisions* delegating unconscionability claims to an arbitrator. He argues that the agreement is unconscionable because of the parties' unequal bargaining power and because Charter required him to consent to arbitration to keep his job. He adds that the agreement unfairly limits discovery. But he raises these arguments against the entire agreement, asserting that we should invalidate it and allow him to pursue his claims in court. He does not limit his challenge to the delegation provisions.

These facts make this case identical to *Rent-A-Center*. That case, like this one, involved a standalone arbitration contract. 561 U.S. at 71–72. And that case, like this one, involved an unconscionability challenge to the agreement as a whole rather than to the specific "delegation" provision reserving unconscionability claims for the arbitrator. *Id.* at 72–75. *Rent-A-Center* held that the plaintiff must raise this challenge with the arbitrator. *Id.* at 71–72. That was so even if

some of the plaintiff's arguments against the contract (such as a complaint about the limits on discovery) could have been used in support of a specific challenge to the contract's delegation provision. *Id.* at 74. Because the plaintiff did not raise that sort of specific challenge, the arbitrator needed to decide the plaintiff's unconscionability claim. *Id.* at 72–75. Here, too, Anderson raised his arguments about the parties' unequal bargaining power and the limits on discovery to challenge the arbitration agreement generally, not the delegation provisions specifically. Like the plaintiff in *Rent-A-Center*, he thus must raise his unconscionability claim with the arbitrator. *Id.*; *see also Swiger v. Rosette*, 989 F.3d 501, 506–07 (6th Cir. 2021).

*Third*, Anderson raises what may (or may not) be considered a "formation" claim: He argues that Charter offered insufficient consideration for his agreement to arbitrate. Must we address this consideration question ourselves even if the agreement's delegation provisions send it to the arbitrator? On the one hand, every first-year law student learns that consideration is "an essential element of contract *formation*," which might suggest that we must ensure that it exists before compelling the parties to arbitrate. *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 252 (2d Cir. 2019) (emphasis added). On the other hand, this technical argument does not go to whether the parties mutually assented to arbitration (unlike, for example, the claim that a party never "signed the contract," *Buckeye*, 546 U.S. at 444 n.1). It instead goes to whether the agreement is legally *enforceable*, which might suggest that the parties could leave it for the arbitrator to resolve. *See MZM Constr.*, 974 F.3d at 398 n.7; *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550–51 (5th Cir. 2018); *Alwert v. Cox Commc'ns, Inc.* (*In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*), 835 F.3d 1195, 1209–11 (10th Cir. 2016).

Ultimately, we opt not to decide whether the parties could send this consideration question to an arbitrator. Even if Anderson is correct that a court (not an arbitrator) must answer it, he is

wrong that the agreement lacked consideration. We can assume that Kentucky law applies to the agreement because both parties agree that it does. *See Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019). Kentucky law makes clear that "an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration." *Energy Homes, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citation omitted). Both sides in this case thus gave adequate consideration by agreeing to arbitrate with each other.

In response, Anderson argues that Charter provided no "new" consideration for his agreement to arbitrate his disputes with the company. He simply ignores that Charter also gave up the right to litigate any disputes that it had with Anderson. And Anderson makes no claim that Charter's consideration was "illusory" because, for example, the company could amend the agreement at any time. *Cf. Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600, 603–04 (6th Cir. 2013). The district court thus properly compelled Anderson to arbitrate his claims.

## III

Anderson also appeals the district court's remedy: dismissal of his suit with prejudice. Charter moved to dismiss the suit or stay it pending arbitration. If the court compelled arbitration, Anderson alternatively argued that it was required to stay the case. The court disagreed and dismissed the case outright, reasoning that it had sent all his claims to arbitration. *Anderson*, 2020 WL 3977664, at *3–4. Could the court legally do so? The Supreme Court has repeatedly reserved this question. *See Lamps Plus*, 139 S. Ct. at 1414 n.1. And the question has split the circuits.

The Federal Arbitration Act establishes procedures for parties to enforce arbitration agreements in federal court. 9 U.S.C. §§ 3–4. Section 3 applies when, as in this case, a plaintiff sues in federal court and the defendant claims that the plaintiff's action contains "any issue referable to arbitration under an agreement in writing for such arbitration[.]" 9 U.S.C. § 3. The

section indicates that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" *Id.*

Several circuits interpret § 3 to compel a district court to stay a case if a party requests that remedy, which means that the court may not dismiss the case outright even when sending all claims to arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 344–46 (2d Cir. 2015); *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269–71 (3d Cir. 2004); *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955–56 (10th Cir. 1994); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam). These circuits rely on § 3's text: It uses the mandatory verb "shall." They also rely on the Act's structure: It "permits immediate appeal of orders hostile to arbitration . . . but bars appeal of interlocutory orders favorable to arbitration." *Katz*, 794 F.3d at 346 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000)). A discretionary dismissal could upend this structure because, unlike a stay, the dismissal allows an appeal from an order favoring arbitration. *Id.*; *compare Preferred Care of Del., Inc. v. Est. of Hopkins*, 845 F.3d 765, 768 (6th Cir. 2017), *with Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275–76 (6th Cir. 1990).

Several other circuits, by contrast, have adopted a "judicially-created exception" to § 3's stay requirement, one that gives district courts discretion to "dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011); *see Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 637–38 (9th Cir. 1988). These circuits rely on an efficiency rationale, reasoning that "retaining jurisdiction and

staying the action will serve no purpose" when the court has found all of the plaintiff's claims to be arbitrable. *Alford*, 975 F.2d at 1164 (citation omitted).

For our part, we have followed the latter approach in unpublished decisions. *See Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 372–73 (6th Cir. 2014); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009); *Hensel v. Cargill, Inc.*, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) (per curiam). We have also indicated that we have appellate jurisdiction when a district court does, in fact, dismiss a suit in this setting. *See Arnold*, 920 F.2d at 1275–76; *see also Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 517–19 (6th Cir. 2017).

Which side of this split has the better argument? And do our cases already put us on the side that allows district courts to dismiss a suit? We need not answer these questions here. Under either approach, the district court should have stayed Anderson's case. Even the circuits that give courts discretion to dismiss a case recognize that the court may abuse its discretion when doing so. *See Green*, 653 F.3d at 770. One court, for example, held that a district court abused its discretion by dismissing a case when it was not clear that the arbitrator would resolve all claims and when the plaintiff could face prejudicial statute-of-limitations hurdles to refiling the suit later. *Id.*; *see also Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002).

This case fits that mold. Because the parties left several "gateway" issues for the arbitrator, the arbitration may not resolve all claims. Charter concedes that Anderson may again pursue his claims in court if the arbitrator finds the agreement unenforceable. Anderson also argues that he could face statute-of-limitations problems if he must file a second suit. Charter admits that the district court's dismissal subjects him to this risk but says that it would disavow a statute-of-limitations defense if the arbitrator found the agreement unenforceable. Yet the district court should not have simply left Anderson to Charter's good graces. It should have stayed the suit

10

pending the arbitration (even assuming that it had discretion to dismiss it). *See Green*, 653 F.3d at 770.

Charter responds that a stay might incentivize Anderson to improperly seek a judicial forum by arguing to the arbitrator that his arbitration submission was untimely and arguing to the courts that his complaint was nevertheless timely (because the statute of limitations had run between these two filings). Yet this argument depends on how an arbitrator will interpret the arbitration exclusion for "[c]laims older than the statute of limitations applicable to such claims[.]" Agreement, R.5-2, PageID#88. When did the statute of limitations stop running under this provision? Was it when Anderson initially filed this suit? Or when he submitted his claim to arbitration? If Anderson continues to press the latter argument, the arbitrator may well decide that his claims fell outside the governing statute of limitations. Perhaps, too, such a finding might bind courts and foreclose him from seeking relief in *any* forum. In the end, though, the parties agreed to contract language that left this coverage question for an arbitrator, not a court, to decide. We thus can leave this concern for another day.

We affirm in part and reverse in part. We affirm the court's decision to order arbitration but remand the case with instructions to enter a stay pending that arbitration.