# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 19, 2014

Docket No. 33,126

JASON B. DAMON and MICHELLE T.
DAMON,

     Plaintiffs-Appellees,

v.

STRUCSURE HOME WARRANTY, LLC,

     Defendant-Appellant,

and

BRIAN MCGILL, an individual; JANELLE
MCGILL, an individual; CARRIE TRAUB,
individually and as a licensed associate real
estate broker; JUMP, INC. d/b/a COLDWELL
BANKER LEGACY, a New Mexico corporation;
VISTA DEL NORTE DEVELOPMENT, LLC,
a New Mexico Limited Liability Company; and
STILLBROOKE HOMES, INC., a New Mexico
corporation,

     Defendants.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge

Tal Young, P.C.
Steven Tal Young
Albuquerque, NM

for Appellees

Brownstein Hyatt Farber Schreck, LLP
Eric R. Burris

Adam E. Lyons
Albuquerque, NM

for Appellant

## OPINION

**VANZI, Judge.**

**{1}** In this case, we address whether a party to a home warranty contract can enforce an arbitration provision contained in that warranty against a nonparty who nevertheless seeks to invoke its benefits. Plaintiffs Michelle and Jason Damon sued Defendant StrucSure Home Warranty, LLC, (StrucSure) and others for structural defects in their home. StrucSure filed a motion to compel arbitration pursuant to a provision in the home warranty it issued to the builder and original purchasers of the property. The district court denied the motion on the basis that Plaintiffs were not parties to the StrucSure warranty and, because they did not bargain for or acknowledge the arbitration provision, they could not be bound by it. We reverse. We hold that a nonparty who directly seeks the benefits of a warranty agreement is equitably estopped from refusing to comply with a reasonable arbitration provision contained in the same agreement.

## BACKGROUND

**{2}** StrucSure is a warranty administrator providing express limited warranty protection for homeowners. The warranty at issue in this case was part of a contract between the builder (Stillbrooke Homes) and the original purchasers of Plaintiffs' home. It includes an enrollment application form signed by a representative of StrucSure, the builder, and the original owners, as well as a warranty coverage booklet, which describes the terms of the warranty. The enrollment application form states that, by signing, the parties specifically acknowledge that they agree with all of the requirements in the warranty coverage booklet. The warranty coverage booklet provides that:

> [w]ithin the limitations described within these two documents, your Builder warrants that your home will be free from qualifying structural defects, and, if provided, will be free from defects in workmanship/ materials and the delivery portion of systems (piping, wiring, ductwork).

It also contains a binding arbitration agreement, which states, in relevant part:

> Any claims, disagreements, disputes or controversies involving You, Your Builder, the Administrator, or the Insurer, or in any combination thereof, which involves this Warranty, the Builder, the Home, the construction or sale of the Home by the Builder, or the real property upon which the Home is constructed, shall be submitted to arbitration. . . . The decisions of the

2

arbitrator will be final and binding, and may be entered as such in any legal proceeding before any court having competent jurisdiction thereof.

A "claim, disagreement, dispute or controversy" is defined as:

an unresolved complaint or claim made under this Warranty; tort allegations, involving misrepresentation, nondisclosure, execution or performance of any contract (including this Warranty or this arbitration agreement); negligence, allegations regarding the breach of the duty of good faith or fair dealing, construction defects or deceptive trade practices.

The stated purpose of the arbitration agreement is to allow any party to the contract "to achieve a legally binding resolution (through an independent third-party arbitration service) of any dispute without resorting to costly and time-consuming litigation." Finally, the agreement, which states that it is self-activating, provides that issues regarding arbitrability are governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-6 (2012).

**{3}** The original owners conveyed the home to Cartus Financial, which sold the home to Plaintiffs. The warranty documents were not part of Plaintiffs' purchase documents with Cartus, and Plaintiffs did not sign either document comprising the warranty. Nevertheless, they assert that the warranty "induced" them to buy the home. At the same time, they assert they did not know about the arbitration agreement in the warranty until after they purchased the home.

**{4}** The underlying dispute arose after the home began to exhibit signs of structural failure. Plaintiffs initially filed a warranty claim with StrucSure but ultimately filed this lawsuit against multiple defendants, including StrucSure. Plaintiffs' complaint alleges that StrucSure "served to insure the structural integrity" of their home by issuing the warranty and conducting the investigation after Plaintiffs discovered the structural defects and that the warranty made Plaintiffs expect the home and property were "of a certain quality" and that the defendants, including StrucSure, would honor the warranty and remedy any structural issues that arose. Plaintiffs also allege StrucSure was aware of the structural issues with their home and refused to rectify them. The complaint asserts nine claims: breach of contract, unjust enrichment, negligent misrepresentation, negligence, professional negligence, breach of the New Mexico Unfair Practices Act, rescission, breach of warranty, and a claim for punitive damages, although it is unclear which claims are specifically asserted against StrucSure.

**{5}** StrucSure moved to compel arbitration of Plaintiffs' claims against it pursuant to the terms of the arbitration agreement. The district court denied the motion, and StrucSure timely appealed.

**DISCUSSION**

**{6}** This Court reviews de novo both the denial of a motion to compel arbitration and the applicability and construction of a contractual provision requiring arbitration. *Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 13, 150 N.M. 669, 265 P.3d 720. The parties do not dispute that the arbitration agreement in the warranty provision is subject to the FAA. We discuss the district court's ruling before turning to the applicability of equitable estoppel to the facts of this case. We then address Plaintiffs' alternative arguments as to why the district court's decision should be affirmed.

**{7}** The district court in this case relied on two cases in reaching its decision that Plaintiffs cannot be bound to arbitrate their claims against StrucSure. Both *Clay v. New Mexico Title Loans, Inc.*, 2012-NMCA-102, ¶ 14, 288 P.3d 888, and *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986), expressly state that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." (Internal quotation marks and citation omitted.) This language was the linchpin of the district court's ruling. Notwithstanding the holdings of *Clay* and *AT&T*, however, we are unpersuaded that these cases are analogous to the issue here. We explain.

**{8}** In *Clay*, the plaintiff failed to repay a loan secured by his vehicle from New Mexico Title Loans. *Clay*, 2012-NMCA-102, ¶ 2. Two employees of the company hired to enforce the lender's security interest tried to repossess the plaintiff's truck. *Id.* The plaintiff resisted, and one of the employees shot him, leaving him unable to walk. *Id.* After the plaintiff sued the lender, among others, the lender moved to compel arbitration, invoking a provision in the lending agreement that committed to arbitration "any claim, dispute or controversy . . . that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement." *Id.* (alteration and internal quotation marks omitted). The arbitration provision, however, excluded the lender's right to enforce its security interest "by using self-help." *Id.* ¶ 17 (internal quotation marks omitted). At issue was whether the plaintiff's claims fell within the scope of the provision. *Id.* ¶¶ 14-28. Although we held that the plaintiff's contract claim fell within its scope, we held that the plaintiff's tort claims against the lender were not subject to the arbitration agreement. We noted that, "[i]n order to fall within the scope of the arbitration clause, the claims at issue must bear a 'reasonable relationship' to the contract in which the arbitration clause is found." *Id.* ¶ 14 (citation omitted). And nothing in the provision demonstrated that the plaintiff agreed to arbitrate claims such as those arising from the shooting during the repossession of his truck. *Id.* ¶ 24. At most, *Clay* deals with the subject matter of the *claims* subject to arbitration, not *who* is bound to arbitrate.[1]

---

[1]On appeal, Plaintiffs also cite *Aiken v. World Fin. Corp. of S.C.*, 644 S.E.2d 705 (S.C. 2007); *Campos v. Homes by Joe Boyden, L.L.C.*, 2006-NMCA-086, 140 N.M. 122, 140 P.3d 543; and *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, 131 N.M. 772, 42 P.3d 122. These cases are discussed in *Clay* and, like *Clay*, address the kinds of claims that are subject to the arbitration clause at issue. *See Clay*, 2012-NMCA-102, ¶¶ 21-25. Plaintiffs do not dispute that the claims they asserted against StrucSure fall under the

4

**{9}**     *AT&T Technologies* addresses an even more remote issue: whether a court or an arbitrator must decide in the first instance whether parties to a collective bargaining agreement intended to arbitrate their grievances concerning layoffs. 475 U.S. at 644. The answer to that question has no bearing on the issue in this case. In the course of deciding that issue, the *AT&T Technologies* Court noted the general rule that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). There are well recognized exceptions to the general rule, however, and we turn to them now.

**{10}**     The single issue in this case is whether Plaintiffs, as subsequent purchasers of the home, are bound by the arbitration provision contained in the warranty coverage booklet originally given to the initial buyers. StrucSure contends that Plaintiffs cannot voluntarily seek the benefits of the warranty without bearing the burdens of the arbitration agreement contained in it. StrucSure also asserts that Plaintiffs are bound by all of the warranty's provisions, including the arbitration agreement, because they voluntarily enforced their rights as assignees under the warranty after taking title to the home. Because we hold that Plaintiffs are equitably estopped from avoiding arbitration in this case, we need not decide whether they are also assignees under the warranty.

**{11}**     The question of who may be bound by an arbitration provision subject to the FAA is governed by federal law. *Arthur Andersen LLP*, 556 U.S. at 630. At least two federal appellate courts "have recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *see Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000). We believe the appropriate principle for evaluating whether Plaintiffs here are bound by the arbitration provision in the warranty is estoppel, commonly referred to as "equitable estoppel." In the arbitration context, equitable estoppel "recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Int'l Paper Co.*, 206 F.3d at 418; *see Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009 Ohio 417, 907 N.E.2d 746, at ¶ 25 (observing that a party to a contract may raise equitable estoppel where the nonparty attempts "to enforce some aspect of the contract" and noting that relying on one part of the contract may estop the nonparty from avoiding an arbitration clause in the contract). Consequently, a nonparty "is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." *Int'l Paper Co.*, 206 F.3d at 418 (internal quotation marks and citation omitted).

**{12}**     This Court has twice touched upon the doctrine of equitable estoppel in the

---

scope of the arbitration agreement and, therefore, these cases are inapposite.

arbitration context, but we have never ultimately decided whether New Mexico would apply the doctrine against a nonparty claimant under facts similar to this case. *See Murken v. Suncor Energy, Inc.*, 2005-NMCA-102, ¶¶ 6-13, 138 N.M. 179, 117 P.3d 985; *Horanburg v. Felter*, 2004-NMCA-121, ¶¶ 17, 18, 136 N.M. 435, 99 P.3d 685. In *Horanburg*, we considered whether a *nonparty* to an arbitration agreement could bind a *party* to the agreement to arbitrate—the reverse of the situation in this case. 2004-NMCA-121, ¶ 18. Although we observed that nonparties to an arbitration agreement generally "are not bound by the agreement and are not subject to, and cannot compel, arbitration[,]" we recognized that there are exceptions to this general rule, including an exception for equitable estoppel. *Id.* ¶¶ 16-17. However, we concluded that, even assuming New Mexico recognizes equitable estoppel in the arbitration context, applying it was inappropriate under the facts of the case. *Id.* ¶ 18. In *Murken*, we considered whether a *party* to an arbitration agreement could bind a *nonparty* to arbitrate. *Murken*, 2005-NMCA-102, ¶¶ 6-13. There, as here, the defendant was a party to the agreement and sought to enforce the agreement against the plaintiff, who was not. *Id.* ¶ 13. This Court noted that "even if New Mexico recognized the doctrine of equitable estoppel in the arbitration context, its application would not be appropriate in [the] case" because the nonparty plaintiff was not "alleged to have embraced and directly benefitted from the agreement[.]" *Id.* ¶¶ 12, 13.

**{13}**     The facts of this case are markedly different from *Murken*. Here, Plaintiffs filed a warranty claim with StrucSure and then later sued StrucSure, claiming the warranty issued to the builder and original owners induced them to buy their home and that StrucSure failed to fulfill the duties it owed Plaintiffs under the warranty. Clearly, Plaintiffs' case against StrucSure hinges on its asserted rights under the warranty agreement from which they seek to directly benefit. We recognize that Plaintiffs contend they never signed the arbitration agreement and that, even though they were aware of the warranty before they purchased the home, they did not know it included the arbitration agreement until after they purchased the home. However, unlike the *Murken* plaintiff, Plaintiffs here voluntarily seek to directly benefit from the warranty by enforcing some of its terms while simultaneously attempting to avoid one of its perceived burdens.

**{14}**     Although we have no case on point, we find persuasive decisions from other jurisdictions that have applied equitable estoppel under a similar set of facts. For example, in *International Paper Co.*, a buyer who was dissatisfied with an industrial saw sued the manufacturer based on a contract between the manufacturer and distributor. 206 F.3d at 413. The manufacturer sought to compel arbitration based on a provision in the manufacturer-distributor contract to which the buyer was not a party. *Id.* at 414-15. As in this case, the buyer argued that it had no knowledge of and could not be bound by the contract containing the arbitration provision. *Id.* at 415. The federal district court rejected the buyer's argument and reasoned that, because the buyer sought to take advantage of certain commitments made by the manufacturer to the distributor in the manufacturer-distributor contract, "it was bound by all commitments in that contract, including the arbitration provision." *Id.* The Fourth Circuit Court of Appeals agreed and, applying principles of equitable estoppel, upheld the district court's decision. *Id.* at 416. The appeals court observed that the manufacturer-

6

distributor contract provided part of the factual foundation for every claim asserted by the buyer; the complaint alleged that the manufacturer failed to honor the warranties in the contract, and the buyer sought damages in accordance with that contract. *Id.* at 418. Thus, it reasoned, the buyer could not "seek to enforce those contractual rights and avoid the contract's requirement that any dispute arising out of the contract be arbitrated." *Id.* (internal quotation marks omitted).

{15}    In *Ex parte Dyess*, 709 So. 2d 447, 448 (Ala. 1997), a customer who was injured while test driving a car brought suit against the car dealership's insurer under the uninsured motorist provision of a policy issued to the dealership. There, as here, the plaintiff sought a benefit under the policy while attempting to avoid the arbitration clause in the policy. *Id.* at 449-50. The Alabama Supreme Court determined that under those circumstances, the plaintiff could not "pick and choose the portions of the contract that he wants to apply." *Id.* at 451. It concluded that to enforce the uninsured motorist provision and not to enforce the arbitration clause would be inconsistent with the FAA and with decisions of the United States Supreme Court. *Id.*; *see also Avila Group, Inc. v. Norma J. of Cal.*, 426 F. Supp. 537, 542 (S.D.N.Y. 1977) ("To allow [the nonparty] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA].").

{16}    Based on the reasoning of the above cases, we hold that Plaintiffs, having voluntarily chosen to seek a direct benefit from the warranty by attempting to enforce its terms against StrucSure, may not now seek to repudiate one of the warranty's provisions. If Plaintiffs wished to exempt themselves from the arbitration clause, they could have chosen not to claim and enforce any of the rights under the warranty. However, once Plaintiffs voluntarily sought to embrace and invoke the benefits created by the warranty, they could not avoid the arbitration provision in the warranty.

{17}    On appeal, Plaintiffs make several alternative arguments as to why the arbitration provision should not be imposed upon them. First, Plaintiffs contend that StrucSure did not prove in the district court that it had a valid arbitration agreement with the original owners and, therefore, Plaintiffs cannot be bound by a contract to arbitrate. Plaintiffs' argument is without merit. StrucSure attached the signed home enrollment application and the arbitration provision to its motion to compel arbitration, and Plaintiffs never contested their validity. Moreover, if there was no valid warranty between StrucSure and the original owners, Plaintiffs, as subsequent owners, would have no basis upon which to state any warranty claims against StrucSure. *See Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 18, 119 N.M. 436, 891 P.2d 1190 ("The party relying on the breach of warranty must prove the existence of a warranty, the breach thereof, causation, and damages."), *overruled on other grounds by Sunnyland Farms, Inc. v. Cent. N.M. Elec. Co-op, Inc.*, 2013-NMSC-017, 301 P.3d 387.

{18}    Plaintiffs also contend that enforcing the arbitration agreement against them would be unfair and unconscionable and that the agreement is a procedurally unconscionable

contract of adhesion. The district court did not rule on either of these arguments, and Plaintiffs provide no support for their generalized assertions on appeal. We therefore do not address them here. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104.

**{19}** We conclude that the doctrine of equitable estoppel is appropriate in this case. Plaintiffs seek to receive a direct benefit from the agreement, and their claims against StrucSure are therefore also subject to the arbitration provision contained in the warranty coverage booklet. The district court's ruling is reversed.

**CONCLUSION**

**{20}** For the reasons set forth above, we reverse.

**{21}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CYNTHIA A. FRY, Judge**