The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: February 6, 2025

**No. A-1-CA-41036**

**ANDRAS SZANTHO, as Personal Representative**
**for the Wrongful Death Estate of BILL FOSTER,**

Plaintiff-Appellee,

v.

**THI OF NEW MEXICO AT SUNSET VILLA,**
**LLC d/b/a SUNSET VILLA CARE CENTER**
**and THI OF NEW MEXICO, LLC,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan Biedscheid, District Court Judge**

Ron Bell Injury Lawyers
Lee Coleman
Albuquerque, NM

Reddick Law, PLLC
Brian D. Reddick
Robert W. Francis
Little Rock, Ark.

for Appellees

Verdi & Ogletree PLLC
Faith Kalman Reyes
Santa Fe, NM

for Appellants

**OPINION**

**DUFFY, Judge.**

{1}      In this appeal we address two issues raised by Defendants THI of New Mexico at Sunset Villa, LLC d/b/a Sunset Villa Care Center and THI of New Mexico, LLC, who operate a long term care facility in Roswell, New Mexico: whether the district court erred in (1) declining to refer the question of whether an arbitration agreement can be enforced against a non-signatory to the arbitrator for decision under the arbitration agreement's delegation clauses, and (2) rejecting Defendants' argument that Plaintiff should be compelled to arbitrate his claims against Defendants because Plaintiff is an intended third-party beneficiary of the arbitration agreement.

{2}      These issues arise out of a wrongful death lawsuit regarding the care Bill Foster (Father) received while a resident at Defendants' facility. When Father was admitted to the facility, one of his children, Don Foster (Son), signed the admission paperwork, including a stand-alone arbitration agreement. Son did not have power of attorney for Father and the parties agree that Son did not sign the documents as Father's legal representative. Father did not sign any of the documents.

{3}      Nevertheless, after Plaintiff Andras Szantho, the personal representative of Father's wrongful death estate, filed the underlying lawsuit, Defendants moved to compel arbitration based on the arbitration agreement signed by Son. The district

court denied Defendants' motion and concluded that the arbitration agreement could not be enforced against Father's wrongful death estate.

{4}     In regard to the matters raised on appeal, we conclude that the issue of whether a non-signatory can be bound by an arbitration agreement is a matter of contract formation for the district court to decide in the first instance. We further hold, as a matter of state contract law, that the third-party beneficiary doctrine does not permit a signatory to enforce a contract against a non-signatory third-party beneficiary where the third-party beneficiary has not otherwise sought to enforce the contract. We accordingly affirm the district court's denial of Defendants' motion to compel arbitration.

**BACKGROUND**

{5}     Father was admitted to Sunset Villa Care Center in Roswell, New Mexico in November 2019. In conjunction with Father's admission, Son signed an admission agreement and a separate arbitration agreement. The first page of the arbitration agreement stated that it was "an Agreement between [Father] ("Resident") *and/or* [Son] ("Representative"), and Sunset Villa ("Facility"):

2

## AGREEMENT FOR DISPUTE RESOLUTION PROGRAM

### PLEASE READ CAREFULLY

We always strive to provide quality care and services to our residents and their families, but on occasion a disagreement may arise. Therefore, we use alternative dispute resolution methods that we call the Dispute Resolution Program ("DRP"). The DRP is designed to resolve serious disputes quickly and inexpensively.

This is an Agreement between ~Bill Foster~ ("Resident") and/or ~Don Foster~ ("Representative"), and ~Sunshine Villa~ ("Facility"). To make this Agreement easier to read and understand, in this document we have used the word "you" to refer to the Resident, as well as his or her family and representative. The words "we," "our," or "facility" mean this Facility and, to the extent that other affiliated or related persons or companies might otherwise be determined to be involved, them as well.

While we hope you agree that our DRP will be beneficial should we have a serious disagreement, we want to be absolutely clear about the following important points regarding the DRP:

**YOUR ADMISSION TO THE FACILITY IS CONTINGENT ON YOU AND YOUR REPRESENTATIVE, IF ANY, ENTERING INTO THIS AGREEMENT TO PARTICIPATE IN THE DRP. BY CHOOSING TO HAVE DISAGREEMENTS RESOLVED THROUGH THE DRP, YOU WILL BE WAIVING THE RIGHT TO HAVE A JUDGE OR A JURY RESOLVE ANY SUCH DISAGREEMENT IN COURT. INSTEAD, IF THERE IS A DISPUTE BETWEEN US, IT WILL BE RESOLVED THROUGH THE DRP. THIS MEANS THAT, IF ALL ELSE FAILS, OUR DISPUTE WILL BE RESOLVED BY A DECISION BY AN ARBITRATOR INSTEAD OF A JUDGE OR A JURY.**

{6} On page six, the arbitration agreement explained the effect of a resident's representative signing the agreement:

**What if a representative signs this Agreement on behalf of the resident?**

When a Resident's Representative signs this Agreement, he or she does so on behalf of the resident and on his or her own behalf. This is referred to as signing in his or her "representative" capacity (on the resident's behalf) and signing in his or her "individual" capacity (on his or her own behalf).

When the resident's representative signs this Agreement in his or her representative capacity, the Representative is speaking for the Resident and requesting that we provide care and services to the Resident. By signing in his or her representative capacity, the Representative assures us that he or she has authority to make this Agreement for, and on behalf of, the Resident. As a result, when the Representative signs this Agreement, it is a contract between the Resident and the Facility just as if the Resident had signed it himself or herself. The assurance that the Representative has authority to enter agreements for the Resident is important because, among other things, it is the basis of the contract between us and the Resident that authorizes us to provide care and services to the Resident and to bill for those services. For this reason, we rely on a Representative's assurance of authority to act for the Resident when we agree to admit the Resident to the Facility.

When this Agreement says that the Representative signs in his or her individual capacity, this means that, in addition to entering the Agreement on behalf of the Resident, the Representative, himself or herself, also enters the agreement with us. The Representative does so because he or she wishes to obtain care and services for the Resident who is a third-party beneficiary of the agreement between the Facility and the Representative. Our agreement to admit the Resident, like this Agreement to use the DRP, therefore, personally benefits the Representative as well as the Resident. Signing this Agreement, however, doesn't make the Representative personally responsible to pay for any care or services provided to the Resident.

Son signed the arbitration agreement on the line designated "Signature of Representative." Father did not sign the arbitration agreement.

IT IS IMPORTANT THAT YOU UNDERSTAND, THAT BY AGREEING TO HAVE ANY DISAGREEMENTS RESOLVED THROUGH THE DRP, WE ARE BOTH WAIVING THE RIGHT TO RESOLVE DISAGREEMENTS IN COURT IN A JUDGE OR A JURY TRIAL. THIS IS BECAUSE THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING AND, WITH VERY LIMITED EXCEPTIONS, CANNOT BE APPEALED TO ANY STATE OR FEDERAL COURT. YOU HAVE THE RIGHT TO SEEK LEGAL COUNSEL AND YOU HAVE THE RIGHT TO RESCIND THIS AGREEMENT WITHIN THREE DAYS FROM THE DATE OF SIGNATURE BY BOTH PARTIES.

_____    Date: _____
Signature of Resident

I am the Representative of the Resident and, in that capacity, as well as individually, I seek to obtain care and services for the Resident. I am signing this Agreement on behalf of the Resident as well as on my own behalf. I am authorized to sign this Agreement on behalf of the Resident. If I have authority to act on behalf of the Resident, pursuant to a power of attorney, conservatorship, or guardianship, I have provided a copy of the legal documents to support my authority to sign this Agreement on behalf of the Resident.

_____    Date: 10-30-19
Signature of Representative

{7}     Just over one year after he was admitted to Sunset Villa, Father passed away. Plaintiff, as personal representative of Father's wrongful death estate, filed a wrongful death lawsuit against Defendants claiming that Father died due to a number of injuries he suffered during his stay at Sunset Villa. Son is not a party to the litigation.

{8}     In lieu of an answer, Defendants filed a motion to compel arbitration. Defendants asserted that Son had signed the arbitration agreement both in his individual capacity and on behalf of Father. Defendants also asserted that the arbitration agreement could be enforced against Father's estate because Father was

5

a third-party beneficiary of the agreement. Finally, Defendants argued that any question as to whether the arbitration agreement could be enforced against a third-party beneficiary must be resolved by the arbitrator pursuant to the delegation provision in the arbitration agreement, which expressly provided that "disagreements regarding the applicability, enforceability or interpretation of this [a]greement will be decided by the arbitrator and not by a judge or jury."[1]

{9}   Plaintiff opposed the motion on the basis that no agreement was formed between Defendants and Father, and in any event, formation issues were not delegated to the arbitrator. Plaintiff argued that Son had no authority to sign the

---

[1]Defendants contend the arbitration agreement contained a second delegation provision by incorporating the Judicial Arbitration and Mediation Service (JAMS) rules. According to Defendants, JAMS Rule 11(b) (2021) provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."

We observe that the arbitration agreement incorporates the JAMS rules under a heading entitled, "Are there rules that must be followed in an arbitration?" and states that "[p]rocedurally, and unless otherwise governed by the [Federal Arbitration Act], the arbitration will follow the rules and procedures of the [JAMS]." Further down on the page, under a separate heading entitled, "How will this Agreement be enforced?", the arbitration agreement contains an express delegation clause that refers "disagreements regarding the applicability, enforceability or interpretation of this Agreement" to the arbitrator. We need not resolve whether the agreement's incorporation of JAMS procedural rules constitutes a clear and unmistakable intent to have the arbitrator decide arbitrability, or how JAMS Rule 11(b) would apply in conjunction with the express delegation clause in the arbitration agreement, given our holding that the issue presented is a matter of contract formation that may not be delegated to the arbitrator.

agreements as Father's representative, and therefore, Son could not bind Father to arbitrate. Further, Plaintiff argued that even if Father was a third-party beneficiary, New Mexico does not authorize a signatory to a contract to enforce that contract against a third-party beneficiary.

{10} Following a hearing, the district court denied Defendants' motion to compel. Defendants appeal.

**DISCUSSION**

{11} On appeal, Defendants argue that the district court erred in two ways. First, Defendants argue that the district court failed to give force to the arbitration agreement's delegation provision(s), which, according to Defendants, gave the arbitrator the authority to decide whether the agreement is enforceable against Father and thereby, Father's wrongful death estate. *See Peck v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 8, 315 P.3d 298 (stating that the personal representative's rights are derivative of the decedent's in wrongful death cases). Second, Defendants argue that the district court incorrectly decided that Father's wrongful death estate cannot be compelled to arbitrate because Father is an intended third-party beneficiary of the arbitration agreement. To evaluate these claims of error, "[w]e apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 9, 470 P.3d 218 (internal quotation marks and citation omitted). Likewise, the question

7

of "whether the parties have agreed to arbitrate presents a question of law" that we review de novo. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901 (internal quotation marks and citation omitted).

## I.      Formation Issues Cannot Be Delegated to the Arbitrator

{12}      The question of who decides a particular issue—the district court or the arbitrator—is not new. *See Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 17, 149 N.M. 681, 254 P.3d 124. The answer in each case depends on what the parties agreed to arbitrate. "The cardinal precept of arbitration is that it is 'simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Local Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 595 (9th Cir. 2018) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Where parties contract to arbitrate their disputes, such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Felts*, 2011-NMCA-062, ¶ 16 (internal quotation marks and citation omitted). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 14, 288 P.3d 888 (internal quotation marks and citation omitted). "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances

8

to arbitration." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986).

{13} Parties may agree to arbitrate the merits of their claims as well as threshold or gateway questions about the arbitrability of those claims, including the enforceability, scope, applicability, and interpretation of the arbitration agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). A delegation provision setting forth the parties' agreement to arbitrate a gateway issue "is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce." *Id.* at 70. Because "arbitration is simply a matter of contract, just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (alteration, internal quotation marks, and citation omitted). "But not all arbitrability issues can be delegated. The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020).

{14} Accordingly, when faced with a motion to compel arbitration, the court must first determine whether the parties to the litigation have agreed to arbitrate. *See*

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010); *Dr.'s Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) ("The threshold question facing any court considering a motion to compel arbitration is whether the parties have indeed agreed to arbitrate." (omission, internal quotation marks, and citation omitted)); *McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 8, 135 N.M. 17, 84 P.3d 65 (explaining that New Mexico's Uniform Arbitration Act, NMSA 1978, § 44-7A-8(b) (2001), does not permit a court to grant a motion to compel arbitration where no agreement to arbitrate exists). "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to enforce." *Granite Rock Co.*, 561 U.S. at 297; *see id.* (observing that issues regarding the "scope of the arbitration clause and its enforceability" may be committed to the arbitrator for decision, but courts should always consider "whether the clause was agreed to" and any dispute regarding whether an agreement was formed). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) (stating that state law principles answer the question of who is bound by an agreement); *Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 28, 303 P.3d 814 ("Whether a valid contract to arbitrate

10

exists is a question of state contract law." (internal quotation marks and citation omitted)).

{15} Only if the answer is "yes" do courts proceed to consider whether the parties have agreed to delegate questions of arbitrability to the arbitrator. *See Fedor*, 976 F.3d at 1105. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (alterations, internal quotation marks, and citation omitted); *Hunt v. Rio at Rust Centre, LLC*, 2021-NMCA-043, ¶ 13, 495 P.3d 634 ("The general rule is that the arbitrability of a particular dispute is a threshold issue to be decided by the district court unless there is *clear and unmistakable evidence* that the parties decided otherwise under the terms of their arbitration agreement." (internal quotation marks and citation omitted)). If the court finds that threshold or gateway questions have been delegated to the arbitrator, the court "must respect the parties' decision as embodied in the contract" absent a specific challenge to the delegation provision. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Sanchez v. United Debt Couns., LLC*, 2024-NMSC-026, ¶ 15, ___ P.3d ___ (holding that the court will review challenges to a delegation clause if the clause "is (1) specifically challenged on (2) such grounds as exist at law or in equity for the revocation of any contract" (internal quotation marks and citation omitted)).

11

{16} With these principles in mind, we turn to the case at hand. The crux of the parties' dispute is who decides—the court or the arbitrator—whether Father, a non-signatory, is bound by the arbitration agreement. Resolution of this question depends on whether the issue is one of contract formation or contract enforceability. *See Dr.'s Assocs., Inc.*, 934 F.3d at 251-52 (discussing the distinction between "a question of contract *formation*, such that a court must decide the issue in order to ensure that the parties actually consented to arbitrate at all . . . [o]r . . . an issue related to the enforceability or scope of the arbitration clause and therefore one that the parties may choose to delegate"). As we explain, the questions presented are a matter of contract *formation*, and therefore, the district court did not err in deciding as a threshold matter whether Father, a non-signatory, had agreed to arbitrate.

{17} Defendants maintain that the issues they raised below—whether Father was a third-party beneficiary and whether the arbitration agreement can be enforced against him on that basis—are matters of contract *enforceability*. Defendants reason that a valid contract to arbitrate was formed between Defendants and Son, and therefore, any question about whether that contract was *enforceable* against Father is for the arbitrator, not the district court, to decide because the arbitration agreement specifically delegates questions of enforceability to the arbitrator. As an initial matter, we emphasize that in this case, neither party asserts that Son had legal authority to act on behalf of Father at the time Son signed the contract. Indeed,

Defendants have expressly disclaimed that they are attempting to enforce the arbitration agreement under an agency theory. Consequently, this is not a case of whether the arbitration agreement is enforceable based on Son's actual or apparent authority to sign the contract on Father's behalf. *See Lopez v. Transitional Hosps. of N.M., LLC*, 2023-NMCA-058, ¶ 13, 534 P.3d 1030 ("Under principles of agency, an agent's agreement to a contract may bind the principal.").

{18} Because Son did not have authority to bind Father to the agreement, the arbitration agreement at issue is, at most, a contract between Defendants and Son *in his individual capacity*.[2] Regardless, Defendants contend that once the district court determines that a contract was validly formed between Defendants and Son, any question regarding who the arbitration agreement can be enforced against is a question of enforceability that must be decided by the arbitrator. In support of their position, Defendants rely on an unpublished federal decision, *Casa Arena Blanca LLC v. Rainwater by Est. of Green*, No. 21-2037, 2022 WL 839800 (10th Cir. Mar. 22, 2022) (order and judgment). *Rainwater* is factually similar to the instant case in that Ms. Rainwater was admitted to a nursing facility under a contract signed only by her daughter, who was not Ms. Rainwater's legally authorized representative. *Id.* at *1-2. After Ms. Rainwater's wrongful death estate filed suit against the facility,

---

[2]We note that Plaintiff disputes whether an agreement was formed with Son. We do not delve into this dispute because the outcome does not impact our resolution of the issues presented on appeal.

the facility moved to compel arbitration. *Id.* at \*1. Like this case, Ms. Rainwater's estate opposed the motion on grounds that no valid agreement to arbitrate was formed between the parties; in response, the facility argued that Ms. Rainwater's estate was bound by the arbitration agreement under the third-party beneficiary doctrine. *Id.* at \*2. On appeal, the Tenth Circuit held that because an agreement to arbitrate was formed between the daughter and the facility, "there is no issue of contract formation, only contract enforcement, [and therefore,] the gateway issue of arbitrability must be submitted to the arbitrator consistent with the delegation provisions in the Arbitration Agreement." *Id.* at \*5. In the court's view, "[t]he district court erred in going on to decide whether there was a *second agreement* to arbitrate formed between the Facility and Ms. Rainwater and then proceeding to address the third-party beneficiary issue." *Id.*

{19} We decline to apply *Rainwater*'s reasoning because it is inconsistent with New Mexico law. *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 29, 140 N.M. 879, 149 P.3d 976 (stating that "we are not bound by federal law when we interpret state law"). In every arbitration case, the first question a court must answer is whether *the parties to the litigation* agreed to arbitrate. *See Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 15, 150 N.M. 669, 265 P.3d 720 ("New Mexico courts generally uphold arbitration agreements except in the absence of a clear agreement on behalf of both parties to arbitrate

disputes."). In this case, the parties are Defendants and the personal representative of Father's wrongful death estate, who stands in the shoes of Father. Son is not a party to the lawsuit. The issue is, therefore, whether there exists a valid agreement to arbitrate between Defendants and Father. This is not a "secondary agreement," as *Rainwater* would characterize it, but rather, the primary and central issue. *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018) ("The question is not whether [the signatory] agreed to arbitrate with someone, but whether a binding arbitration agreement exists between [the signatory] and the [non-signatory]."). The formation of an agreement to arbitrate between Defendants and Son in his individual capacity does not answer whether an agreement to arbitrate was formed between Defendants and *Father*.

{20}    In this case, whether Father, a non-signatory to the agreement, can be said to have agreed to arbitrate is a formation question the court must resolve before it may order arbitration. *See Granite Rock Co.*, 561 U.S. at 296-97 (stating that "[i]t is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"). We reach this conclusion under state law principles. *See Arthur Andersen LLP*, 556 U.S. at 631 (stating that state law determines whether a contract may be enforced by or against non-parties). The general rule in New Mexico is that "nonparties to an arbitration agreement generally are not bound by the agreement and are not subject to . . . arbitration." *Damon v.*

15

*Strucsure Home Warranty, LLC*, 2014-NMCA-116, ¶ 12, 338 P.3d 123 (internal quotation marks omitted). New Mexico also recognizes exceptions to this general rule that allow non-signatories to be bound by an arbitration agreement under limited circumstances. *See, e.g., id.* ¶ 11 (recognizing "five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel" (internal quotation marks and citation omitted)). Indeed, when New Mexico courts have decided cases involving non-signatories, they have concluded either that (1) the non-signatory is not a party to the arbitration agreement and never agreed to arbitrate any claims, or (2) the non-signatory could be said to have agreed to arbitrate by means other than signing a contract based on one of five theories arising out of contract and agency law. *See, e.g., id.* ¶¶ 11-16 (holding that a non-signatory could be bound by an arbitration provision under the doctrine of equitable estoppel where the non-signatory voluntarily sought to directly benefit from the agreement by attempting to enforce it); *Monette v. Tinsley*, 1999-NMCA-040, ¶¶ 9-12, 126 N.M. 748, 975 P.2d 361 (holding that a guarantor was not a party to the contract and was not bound by the contract's arbitration provision); *Murken v. Suncor Energy, Inc.*, 2005-NMCA-102, ¶ 5, 138 N.M. 179, 117 P.3d 985 (deciding that a non-signatory plaintiff could not be compelled to arbitrate); *Rodriguez v. Forrester*, A-1-CA-36223, mem. op. ¶¶ 20-21 (N.M. Ct. App. Jan. 7, 2019) (nonprecedential) (holding

16

that father could not be compelled to arbitrate because he was a non-signatory to the agreement and never agreed to arbitrate his claims).

{21} As these cases illustrate, "[w]here a nonsignatory is involved in a motion to compel arbitration under a contract, there is a question as to the very *existence of an agreement involving the nonsignatory*." *RUAG Ammotec GmbH v. Archon Firearms, Inc.*, 538 P.3d 428, 433 (Nev. 2023). Because this issue "calls into question the formation . . . of the specific arbitration clause that a party seeks to have the court enforce," it is a matter for judicial determination. *Granite Rock Co.*, 561 U.S. at 297. In particular, the trial court must determine whether an agreement to arbitrate exists between the signatory and the non-signatory—i.e., whether the signatory and the non-signatory agreed to arbitrate their dispute. Unless the court is satisfied that a non-signatory has agreed to arbitration, the non-signatory cannot be compelled to arbitrate. *Id.* at 297; *see also id.* at 299 (stating that "the first principle that underscores all of our arbitration decisions[ is that a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—but only those disputes— that the parties have agreed to submit to arbitration" (emphasis, internal quotation marks, and citations omitted)).

{22} As a final point of clarification, we observe that Defendants' contrary argument appears to hinge on the idea that when "enforceability" issues are delegated to the arbitrator, this necessarily includes whether an arbitration agreement

can be "enforced" against a particular party. This is not the case when a party to the litigation opposes a motion to compel arbitration on grounds that they never agreed to arbitrate in the first place. This particular challenge is bound up with the threshold question of whether an agreement to arbitrate was ever concluded, and must therefore be resolved by the court. *See, e.g.*, *Wu v. Uber Techs., Inc.*, 186 N.Y.S.3d 500, 522, 525 (N.Y. App. Div. 2022) ("[E]ven where an agreement contains a broad delegation provision . . . , a party's claim that she never agreed to the agreement always remains for a court to decide, whereas a party's claim that the agreement is invalid or unenforceable for reasons of fraud, unconscionability, etc. belongs to an arbitrator (presuming that the delegation provision is not separately and directly challenged).").

{23}    In light of our conclusion that the issue is one of formation, it is not necessary to reach Defendants' remaining arguments related to the arbitration agreement's delegation clause(s), specifically that (1) there is clear and unmistakable evidence of an agreement to arbitrate arbitrability, and (2) Plaintiff failed to specifically challenge the delegation clause(s). Simply put, "even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *RUAG Ammotec GmbH*, 538 P.3d at 434 (alteration, internal quotation marks, and citation omitted). Most federal courts and a number of state courts have embraced this

18

conclusion and have held that formation issues must always be resolved by the court, even where the agreement contains a delegation clause.[3]

---

[3]*See Dr.'s Assocs. Inc.*, 934 F.3d at 251 (holding that "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place"); *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 401-02 (3d Cir. 2020) (holding that "courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision"); *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 n.9 (4th Cir. 2019) (stating that "provisions requiring the arbitration of arbitrability questions do not . . . preclude a court from deciding that a party never made an agreement to arbitrate *any* issue (which would necessarily encompass an arbitrability issue)"); *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) ("We have explained before that courts must decide at the outset whether an enforceable arbitration agreement exists at all. The parties cannot delegate disputes over the very *existence* of an arbitration agreement." (alterations, footnote, and internal quotation marks omitted)); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("Arguments that an agreement to arbitrate was never formed . . . are to be heard by the court even where a delegation clause exists."); *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385-86 (6th Cir. 2020) (declining to enforce a delegation provision where the plaintiffs argued they did not form an agreement to arbitrate); *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("[T]he arbitrator cannot resolve any issues until the court has ascertained that there is an actual agreement; the breadth of a delegation is irrelevant if the parties did not enter into a contract."); *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 n.2 (8th Cir. 2014) (holding that the court must decide whether the parties intended to submit their dispute to the arbitrator as a threshold matter, regardless of the agreement's delegation provision); *Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 635 (9th Cir. 2021) (holding that "parties cannot delegate issues of formation to the arbitrator"); *Fedor*, 976 F.3d at 1104 ("It is true that a delegation clause can typically be 'severed' from an arbitration agreement and can thus prevent a court from deciding certain arbitrability issues unless a litigant challenged the clause directly. However, a delegation clause cannot be severed from an agreement that does not exist. Courts must therefore first determine whether an arbitration agreement was indeed formed before enforcing a delegation clause therein."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stucco Sys., LLC*, 289 F. Supp. 3d 457, 466 (S.D.N.Y. 2018) ("To use the delegation clause to demand that arbitrators settle the question of who are the parties to the agreement puts the proverbial cart—the question of whether the

arbitration agreement is valid—before the horse—whether a non-signatory has anything to do with a contract it did not clearly sign."); *Schoenfeld v. Mercedes-Benz USA, LLC*, 532 F. Supp. 3d 506, 510 (S.D. Ohio 2021) (stating that "the court's first job is to determine whether an arbitration agreement exists at all" and noting that "*Henry Schein* did not determine that just because an agreement contains an express delegation of arbitrability to the arbitrator, nonsignatories to an agreement must be compulsorily referred to arbitration. Courts must still consider the first step . . . whether a valid arbitration agreement exists" (internal quotation marks and citations omitted)); *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 753 (Del. Ch. 2023) (observing that "[a] consistent line of decisions from the United States Court of Appeals for the Third Circuit holds that a court must address issues of contract formation before deferring to an arbitrator to resolve the who-decides question under a delegation provision"); *Odum v. LP Graceville, LLC*, 277 So. 3d 194, 197 (Fla. Dist. Ct. App. 2019) ("A determination of whether a party seeking to enforce an arbitration agreement actually entered into that agreement is one for the trial court, regardless of a delegation clause."); *Mikoff v. Unlimited Dev., Inc.*, 2024 IL App (4th) 230513, ¶¶ 35, 38 ("Where, as here, a party challenges the formation of an arbitration agreement, it is a question going to the making of the agreement to arbitrate and may be adjudicated by the court." (internal quotation marks and citation omitted)); *Dixon v. Daymar Colls. Grp., LLC*, 483 S.W.3d 332, 342 (Ky. 2015) (holding that where questions regarding the valid formation of the arbitration agreement exist, "a court is the proper forum for determining whether the arbitration agreement is enforceable, a delegation provision notwithstanding"); *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 437 (Mo. 2020) (noting that "the court is responsible for deciding in the first instance whether a party who did not sign an arbitration agreement can be bound to arbitrate because that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate*" (internal quotation marks, and citation omitted)); *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls, Inc.*, 2008 MT 175, ¶¶ 4, 19, 343 Mont. 392, 185 P.3d 332 ("When a party challenges a contract containing an arbitration clause on the ground the parties never entered a contract, the court, not arbitration, is the appropriate forum to determine whether a contract existed, prior to compelling arbitration."); *Cullinane v. Beverly Enters.-Neb., Inc.*, 912 N.W.2d 774, 789 (Neb. 2018) (stating that the court must perform "an analysis of whether there is an agreement to arbitrate any set of claims" as a first step even where an agreement contains a delegation clause); *RUAG Ammotec GmbH*, 538 P.3d at 433 (holding that whether a non-signatory is a party to the arbitration agreement is a formation issue for the court to decide and parties may not delegate that issue to the arbitrator); *Wu*, 186 N.Y.S.3d at 525 ("[E]ven where an agreement contains a broad delegation

20

{24}    This approach is consistent with the basic principle expressed in New Mexico and elsewhere that arbitration is strictly a matter of consent, and the court cannot order arbitration of a particular dispute unless it is satisfied that the parties agreed to arbitrate that dispute. *See Clay*, 2012-NMCA-102, ¶ 14; *Granite Rock Co.*, 561 U.S. at 297. As the Second Circuit observed, "[t]o take the question of contract formation away from the courts would essentially force parties into arbitration when the parties dispute whether they ever consented to arbitrate anything in the first place." *Dr.'s Assocs., Inc.*, 934 F.3d at 251. Accordingly, we join those jurisdictions that have concluded that even where a contract contains a delegation clause, questions of contract formation must be decided by the court and may not be delegated to the arbitrator. *See Granite Rock Co.*, 561 U.S. at 299-300 ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the

provision . . . , a party's claim that she never agreed to the agreement always remains for a court to decide."); *Sanders v. Savannah Highway Auto. Co.*, 892 S.E.2d 112, 118 (S.C. 2023) ("[T]he court is always the proper body to determine whether the parties agreed to arbitrate in the first instance."); *Clayton v. Davidson Contractors, LLC*, No. E2013-02296-COA-R3-CV, 2015 WL 1880973, at *7 (Tenn. Ct. App. Apr. 24, 2015) (holding that "when a party claims it never concluded an agreement at all, it is for the court, not the arbitrator, to determine whether the parties agreed to the arbitration provision upon which the party seeking arbitration relies," even where the agreement contains a delegation provision).

21

dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement.").

{25}    Based on the foregoing, we hold that the district court correctly determined that it was for the district court, rather than an arbitrator, to decide whether Defendants and Father agreed to arbitrate.

## II.    Third-Party Beneficiary

{26}    We now turn to the district court's substantive ruling on the formation issue. The court concluded that "[u]nder New Mexico law, an agreement can be enforced against a third-party beneficiary if the third-party beneficiary accepts the contract after it is made." *See Rankin v. Ridge*, 1948-NMSC-068, ¶ 23, 53 N.M. 33, 201 P.2d 359 ("'We think the better rule is that a contract made upon a valid consideration between two or more parties for the benefit of a third may be enforced by such third party if he accepts it after it is made, though he is not named in the contract or may not have known of it at the time.'" (quoting *Johnson v. Armstrong & Armstrong*, 1937-NMSC-014, ¶ 17, 41 N.M. 206, 66 P.2d 992)). The district court concluded that the agreement was not enforceable in this case because "[t]here is no evidence that [Father] accepted the arbitration agreement after it was made." For the reasons that follow, we affirm the district court's conclusion that the third-party beneficiary doctrine does not permit Defendants to enforce the arbitration agreement against Plaintiff.

{27} New Mexico courts have previously recognized that non-signatories may be bound by an arbitration agreement under principles of contract, agency, or equity. *See generally Damon*, 2014-NMCA-116, ¶ 11 (holding that a non-signatory to an arbitration agreement could be bound to arbitrate under the doctrine of equitable estoppel where they sought to enforce the agreement); *Barron*, 2011-NMCA-094, ¶¶ 40, 42 (holding that a non-signatory grandmother was bound by an arbitration agreement signed by granddaughter under the law of agency). New Mexico courts have not previously had an opportunity to consider whether the third-party beneficiary doctrine applies to allow a signatory to enforce an arbitration agreement against a non-signatory. Resolution of this question is governed by principles of state contract law. *See generally Arthur Andersen*, 556 U.S. at 630-31; *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 52, 304 P.3d 409 ("New Mexico's common law of contracts applies to arbitration agreements." (internal quotation marks and citation omitted)).

{28} In New Mexico, the third-party beneficiary doctrine is an exception to the "general rule of law that one who is not a party to a contract cannot maintain suit upon it." *Fleet Mortg. Corp. v. Schuster*, 1991-NMSC-046, ¶ 4, 112 N.M. 48, 811 P.2d 81. Our Supreme Court recognized that "[a] third party may be a beneficiary of such contract, and as a beneficiary *may have an enforceable right against a party to a contract*." *Id.* (emphasis added). Thus, although intended third-party beneficiaries

are not in privity of contract, they are "accorded traditional contract remedies with respect to the bargain intended for [their] benefit." *Leyba v. Whitley*, 1995-NMSC-066, ¶ 11, 120 N.M. 768, 907 P.2d 172.

{29} Without addressing this body of law or acknowledging that the issue they have raised is a matter of first impression in New Mexico, Defendants devote the bulk of their briefing to establishing that Father, and therefore his estate, were third-party beneficiaries of the arbitration agreement. However, even if we were to conclude that Father was a third-party beneficiary of the stand-alone arbitration agreement— a matter we expressly do not decide—Defendants have not established that New Mexico law permits a contract to be offensively enforced against a third-party beneficiary under the circumstances here.

{30} In their brief in chief, Defendants cite only two federal district court cases in support of their contention that the arbitration agreement can be enforced against Plaintiff, both of which acknowledge that New Mexico law has not recognized the right of a signatory to enforce a contract against a non-signatory third-party beneficiary. *See Pinnacle Health Facilities XXXIII, LP v. Crecca*, No. CIV 15-cv-01062 RB/LAM, 2016 WL 9818326, at *10-11 (D.N.M. Nov. 7, 2016) (mem. and order); *THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1188-89 (D.N.M. 2012). Both cases quoted and relied on the reasoning originally expressed

in *THI of N.M. at Hobbs Center, LLC v. Patton*, No. 11-537 LH/CG, 2012 WL 112216, at \*7-8 (D.N.M. Jan. 3, 2012), and we focus our analysis on the source.

{31} In *Patton*, the federal district court correctly recognized that New Mexico's third-party beneficiary cases have involved a non-signatory third-party beneficiary attempting to enforce the terms of a contract against a signatory. *Id.* at \*8. As for whether New Mexico would apply the third-party beneficiary doctrine to the inverse situation, the court relied heavily on decisions by courts in Florida, Mississippi, and South Carolina allowing a signatory to compel a non-signatory to arbitrate under the third-party beneficiary doctrine. *Id.* Without analysis, the court concluded that New Mexico would follow the same reasoning and extend the third-party beneficiary doctrine to allow a signatory to enforce an arbitration provision against a non-signatory third-party beneficiary. *Id.*

{32} We disagree with the conclusion and reasoning of the *Patton* court, and because "we are not bound by federal court decisions purporting to interpret New Mexico state common or statutory law," *Hovey-Jaramillo v. Liberty Mut. Ins.*, 2023-NMCA-068, ¶ 18, 535 P.3d 747, we decline to follow *Patton*. Of note, after *Patton* was decided, state appellate courts in Florida, Mississippi, and South Carolina all rejected the application of the third-party beneficiary doctrine to enforce a contract against a non-signatory, though for different reasons. In *Mendez v. Hampton Court Nursing Center, LLC*, 203 So. 3d 146, 149 (Fla. 2016), the Supreme Court of Florida

25

held that "the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around. The third-party beneficiary doctrine does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party." *Id.* (citation omitted).

{33}    In *Hattiesburg Health & Rehab Center, LLC v. Brown*, 176 So. 3d 17, 21 (Miss. 2015), the Supreme Court of Mississippi rejected the defendant's argument that "[n]on-signatories can be bound to an arbitration clause if determined to be a third-party beneficiary," noting that the defendant had cited "only nonapplicable and/or nonbinding law to support this assertion," including the federal district court case relied on by the court in *Patton*. *See id.* at 21 n.3 (internal quotation marks omitted). The Mississippi Supreme Court went on to conclude that the non-signatories were not third-party beneficiaries for purposes of enforcing an arbitration provision because the contracts at issue had not been executed by someone with legal capacity to sign on behalf of the third party. *Id.* at 21-22.

{34}    In *Thompson v. Pruitt Corp.*, 784 S.E.2d 679, 687 (S.C. Ct. App. 2016), the Court of Appeals of South Carolina held that "a third-party beneficiary to an arbitration agreement cannot be required to arbitrate a claim unless the third party is attempting to enforce the contract containing the arbitration agreement." *Id.* (internal quotation marks and citation omitted). The court went on to note that the daughter

was not attempting to enforce the arbitration agreement on behalf of her mother's estate, but "[r]ather, she has asserted tort claims against [the a]ppellants arising out of the patient-provider relationship created by the separate [a]dmission [a]greement." *Id.*

{35}     In sum, many of the cases relied upon by the federal court in *Patton, Crecca*, and *Spradlin* do not appear to reflect existing law. Defendants have not attempted to provide additional out-of-state authority to demonstrate what the prevailing view is in other jurisdictions, nor have they offered any analysis as to why New Mexico should expand the third-party beneficiary doctrine as they propose. Instead, Defendants assert that "New Mexico courts have applied the third-party beneficiary doctrine *against* non-signatory third parties." This is not the case. Of the three New Mexico cases Defendants cite in their reply brief, two involved suits brought by the non-signatory third party to obtain benefits under an insurance contract. *See Floeck v. United Benefit Life Ins. Co.*, 1948-NMSC-049, ¶ 2, 52 N.M. 324, 197 P.2d 897; *Moruzzi v. Fed. Life & Cas. Co.*, 1938-NMSC-002, ¶ 6, 42 N.M. 35, 75 P.2d 320. In the third, *Rankin*, 1948-NMSC-068, ¶ 23, the court allowed a party to enforce an oral contract against a third party because the third party had assumed the contract at issue. *See Damon*, 2014-NMCA-116, ¶ 11 (observing that assumption is a basis for binding a non-party to an agreement).

27

{36} Under existing New Mexico law, an intended third-party beneficiary may bring suit to enforce a contract signed by others. *Fleet Mortg. Corp.*, 1991-NMSC-046, ¶ 4. We find no support for the assertion that the third-party beneficiary doctrine works "the other way around" to enable a contracting party to enforce a contract against a non-signatory. *See Mendez*, 203 So. 3d at 149. We agree with the Florida Supreme Court that "[t]wo parties [cannot] bind a third—without the third party's agreement—merely by conferring a benefit on the third party." *Id.*

{37} The Florida Supreme Court also recognized that "when a plaintiff sues under a contract to which the plaintiff is not a party . . . we will ordinarily enforce an arbitration clause contained in that contract, absent some other valid defense." *Id.* Our Supreme Court recognized the same principle in *Floeck*, holding that a third-party beneficiary cannot seek the benefit of the contract while avoiding other provisions; "[s]he must take the [contract] as she finds it and abide by its terms." 1948-NMSC-049, ¶ 17. Nevertheless, those facts are not present here. *See Mendez*, 203 So. 3d at 149 (observing that "the father's estate sued for negligence and statutory violations—not to enforce the son's contract with [the defendant]"). Plaintiff did not seek to enforce the contracts entered into between Defendants and Son—either the stand-alone arbitration agreement or the admission agreement. Rather, Plaintiff brought claims for wrongful death, negligence, violation of the Unfair Trade Practices Act, and punitive damages. Under the facts in this case, the

third-party beneficiary doctrine as recognized in New Mexico does not provide a basis for binding Plaintiff to the arbitration agreement.

**CONCLUSION**

{38}    For the foregoing reasons, we affirm the district court's denial of Defendants' motion to compel arbitration.

{39}    **IT IS SO ORDERED.**

_____

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

_____

**ZACHARY A. IVES, Judge**

_____

**SHAMMARA H. HENDERSON, Judge**